UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

MICHAEL LINDELL,

                     Plaintiff,

           - against -

MAIL MEDIA INC. d/b/a MAIL ONLINE and
LAURA COLLINS,

                 Defendants.

------------------------------------------------------------- x

Case No. 1:21-cv-00667

**ORAL ARGUMENT REQUESTED**


# MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS MAIL MEDIA, INC. AND LAURA COLLINS TO DISMISS THE COMPLAINT

Kelli L. Sager (admitted *pro hac vice)*
Selina MacLaren (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:  (213) 633-6800
Fax:  (213) 633-6899
kellisager@dwt.com
selinamaclaren@dwt.com

Jeremy A. Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax:  (212) 489-8340
jeremychase@dwt.com

*Attorneys for Mail Media, Inc. and Laura Collins*

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT.................................................................................... 1

STATEMENT OF FACTS...................................................................................... 4

    A.    The Parties ......................................................................................4

    B.    The Article ......................................................................................4

    C.    Plaintiff's Lawsuit...........................................................................5

ARGUMENT ....................................................................................................... 6

I.    NEW YORK LAW APPLIES TO THIS CASE................................................. 7

II.    THE STATEMENTS ARE NOT DEFAMATORY AS A MATTER OF LAW ............... 9

    A.    Stating Unmarried Adults Had A Consensual Relationship Is Not Defamatory ...................................................................................10

    B.    Stating An Adult Gave Alcohol As A Gift To Another Adult Is Not Defamatory ...................................................................................13

III.    THE STATEMENTS AT ISSUE ARE NOT DEFAMATORY *PER SE*, AND PLAINTIFF FAILS TO PLEAD SPECIAL DAMAGES ................................. 15

IV.    THE INCREMENTAL HARM DOCTRINE BARS PLAINTIFF'S CLAIM................ 18

V.    PLAINTIFF FAILED TO ADEQUATELY PLEAD ACTUAL MALICE .................... 20

VI.    COURTS SHOULD DISPOSE OF CLAIMS ARISING OUT THE EXERCISE OF FREE SPEECH RIGHTS AT THE PLEADING STAGE ................................. 23

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ..............................8

*Agnant v. Shakur*,
   30 F. Supp. 2d 420 (S.D.N.Y. 1998) ........................................................................................14

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001)......................................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................6, 13

*Booking v. Gen. Star Mgmt. Co.*,
   254 F.3d 414 (2d Cir. 2001)........................................................................................................7

*Buchanan v. Associated Press*,
   398 F. Supp. 1196 (D.D.C. 1975) .............................................................................................21

*BYD Co. v. VICE Media LLC*,
   2021 WL 1225918 (S.D.N.Y. Mar. 31, 2021) ..........................................................................22

*Cabello-Rondóon v. Dow Jones & Co.*,
   720 F. App'x 87 (2d Cir. 2018) .................................................................................................23

*Catalanello v. Kramer*,
   18 F. Supp. 3d 504 (S.D.N.Y. 2014)...........................................................................................8

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000)................................................................................................21, 23

*Cerasani v. Sony Corp.*,
   991 F. Supp. 343 (S.D.N.Y. 1998) ...........................................................................................20

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)................................................................................................13, 14

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001).....................................................................................................18

*Coleman v. Grand,*
  2021 WL 768167 (E.D.N.Y. Feb. 26, 2021)..................................................................22, 25

*Condit v. Dunne,*
  317 F. Supp. 2d 344 (S.D.N.Y. 2004)................................................................................8, 9

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.,*
  2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) .....................................................................18

*Davis v. Costa-Gavras,*
  580 F. Supp. 1082 (S.D.N.Y. 1984)........................................................................................8

*Deaton v. Napoli,*
  2019 WL 156930 (E.D.N.Y. Jan. 10, 2019) ..........................................................................7

*Dellefave v. Access Temporaries, Inc.,*
  2001 WL 25745 (S.D.N.Y. 2001) .........................................................................................17

*Dombrowski v. Pfister,*
  380 U.S. 479 (1965)...............................................................................................................23

*Dorsey v. National Enquirer, Inc.,*
  973 F.2d 1431 (9th Cir. 1992) ..............................................................................................24

*Epstein v. N.Y. City Dist. Council of Carpenters Benefit Funds,*
  2016 WL 1718262 (S.D.N.Y. Apr. 28, 2016) ........................................................................7

*Farah v. Esquire Magazine, Inc.,*
  863 F. Supp. 2d 29 (D.D.C. 2012), *aff'd,* 736 F.3d 528 (D.C. Cir. 2013)..............................7

*Freedlander v. Edens Broad., Inc.,*
  734 F. Supp. 221 (E.D. Va. 1990), *aff'd,* 923 F.2d 848 (4th Cir. 1991)...............................11

*Galu v. SwissAir: Swiss Air Transp. Co.,*
  1987 WL 15580 (S.D.N.Y. Aug. 3, 1987) ............................................................................20

*Garber v. Legg Mason, Inc.,*
  347 F. App'x 665 (2d Cir. 2009) .............................................................................................7

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974)...............................................................................................................20

*Girod v. El Dia, Inc.,*
  668 F. Supp. 82 (D.P.R. 1987)...............................................................................................21

*Greenbelt Co-op. Publ'g Ass'n v. Bresler,*
  398 U.S. 6 (1970)...................................................................................................................21

*Guccione v. Hustler Magazine, Inc.*,
    800 F.2d 298 (2d Cir. 1986)...........................................................................20

*Halebian v. Berv*,
    644 F.3d 122 (2d Cir. 2011)..............................................................................6

*Harte-Hanks Comm'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989).........................................................................................23

*Hartwig v. Albertus Magnus Coll.*,
    93 F. Supp. 2d 200 (D. Conn. 2000)................................................................14

*Herbert v. Lando*,
    781 F.2d 298 (2d Cir. 1986).......................................................................18, 19

*Hyung Jin Moon v. Hak Ja Han Moon*,
    431 F. Supp. 3d 394 (S.D.N.Y. 2019), *aff'd as modified sub nom.*
    *Moon v. Moon*, 833 F. App'x 876 (2d Cir. 2020)............................................14

*IBM Corp. v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004)...............................................................................7

*In re Harbinger Capital Partners Funds Investor Litig.*,
    2013 WL 5441754 (S.D.N.Y. Sept. 30, 2013), *vacated in part on recon.*
    *on other grounds*, 2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013)......................6

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998)..........................................................13, 19

*Jones v. Globe Int'l, Inc.*,
    1995 WL 819177 (D. Conn. Sept. 26, 1995)....................................................20

*Joyce v. Thompson Wigdor & Gilly LLP*,
    2008 WL 2329227 (S.D.N.Y. June 3, 2008).....................................................18

*Kavanagh v. Zwilling*,
    997 F. Supp. 2d 241 (S.D.N.Y.), *aff'd*, 578 F. App'x 24 (2d Cir. 2014)..........14

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021)................................................................................9

*Klagsbrun v. Va'ad Harabonim of Greater Monsey*,
    53 F. Supp. 2d 732 (D.N.J. 1999), *aff'd*, 263 F.3d 158 (3d Cir. 2001)............14

*Krumholz v. Fluid Mechanisms of Hauppauge, Inc.*,
    1989 WL 62353 (E.D.N.Y. June 5, 1989).........................................................13

*Lafaro v. New York City Cardiothoracic Grp.*,
    570 F.3d 471 (2d Cir. 2009)...........................................................................6

*Lee v. Bankers Tr. Co.*,
    166 F.3d 540 (2d Cir. 1999)...........................................................................8

*Lian v. Sedgwick James of N.Y., Inc.*,
    992 F. Supp. 644 (S.D.N.Y. 1998) .............................................................17, 18

*Machleder v. Diaz*,
    801 F.2d 46 (2d Cir. 1986).............................................................................8

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020)..........................................................................21

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) .............................................................7

*Meeropol v. Nizer*,
    381 F. Supp. 29 (S.D.N.Y. 1974), *aff'd*, 560 F.2d 1061 (2d Cir. 1977) .................................24

*Mennella v. Am. Airlines, Inc.*,
    2019 WL 1429636 (S.D. Fla. Mar. 29, 2019), *aff'd*, 824 F. App'x 696
    (11th Cir. 2020).........................................................................................16

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990).......................................................................................15

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) .....................................................................7, 22

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)................................................................................20, 23

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ......................................................................15

*Nguyen v. FXCM Inc.*,
    364 F. Supp. 3d 227 (S.D.N.Y. 2019)..............................................................7

*Oakley v. Dolan*,
    2020 WL 818920 (S.D.N.Y. Feb. 19, 2020), *aff'd in relevant part*,
    833 F. App'x 896 (2d Cir. 2020) ...............................................................15, 16

*Palin v. New York Times Co.*,
    2020 WL 7711593 (S.D.N.Y. Dec. 29, 2020) ...............................................21, 25

*Palmisano v. News Syndicate Co.*,
    130 F. Supp. 17 (S.D.N.Y. 1955) .........................................................................8

*Peck v. Trib. Co.*,
    214 U.S. 185 (1909)...........................................................................................14

*Rebozo v. Washington Post Co.*,
    637 F.2d 375 (5th Cir. 1981) .............................................................................21

*Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*,
    516 F. Supp. 742 (S.D.N.Y. 1981) ...................................................................19

*Stern v. Cosby*,
    645 F. Supp. 2d 258 (S.D.N.Y. 2009)................................................10, 14, 15

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
    2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007)..................................................9

*Turkish Coal. of Am., Inc. v. Bruininks*,
    678 F.3d 617 (8th Cir. 2012) ..........................................................................7, 9

*Van Buskirk v. The New York Times Co.*,
    325 F.3d 87 (2d Cir. 2003)...............................................................................7, 9

*Verragio, Ltd. v. AE Jewelers, Inc.*,
    2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) ...................................................7

*Waldbaum v. Fairchild Publs., Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 898 (1980) .................21

*Walker v. City of N.Y.*,
    2014 WL 1259618 (S.D.N.Y. Mar. 18, 2014) ...................................................7

*Washington Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966) .........................................................................24

**State Cases**

*Alfajr Printing & Publ'g Co. v. Zuckerman*,
    230 A.D.2d 879 (2d Dep't 1996).......................................................................9

*Alvarado v. K-III Mag. Corp.*,
    203 A.D.2d 135 (1994) .....................................................................................15

*Anderson v. Kammeier*,
    262 N.W.2d 366 (Minn. 1977)..........................................................................16

*Armstrong v. Simon & Schuster*,
    85 N.Y.2d 373 (1995) .......................................................................................24

*Aronson v. Wiersma*,
     65 N.Y.2d 592 (1985) .................................................................................9, 18

*Ava v. NYP Holdings, Inc.*,
     64 A.D.3d 407 (1st Dep't 2009) ..........................................................................9

*Bement v. N.Y.P. Holdings, Inc.*,
     307 A.D.2d 86 (1st Dep't 2003) ........................................................................11

*Carradine v. Minnesota*,
     511 N.W.2d 733 (Minn. 1994) ..........................................................................19

*Cassini v. Advance Publ'ns*,
     41 Misc. 3d 1202(A), (Sup. Ct. N.Y. Cty. Mar. 14, 2013), *aff'd*,
     125 A.D.3d 467 (1st Dep't 2015) ......................................................................12

*Christopher Lisa Matthew Policano, Inc. v. N. Am. Precis Syndicate, Inc.*,
     129 A.D.2d 488 (1st Dep't 1987) ........................................................................9

*Cohn v. NBC*,
     50 N.Y.2d 885 (1980) .......................................................................................10

*Computersearch Corp. v. ECL Indus., Inc.*,
     142 A.D.2d 961 (4th Dep't 1988) ........................................................................4

*Connelly v. McKay*,
     176 Misc. 68 (Sup. Ct. N.Y. Cty. 1941) ...........................................................14

*D Mag. Partners, L.P. v. Reyes*,
     565 S.W.3d 38 (Tex. App. 2017), *aff'd in relevant part sub nom.*
     *Dallas Symphony Ass'n v. Reyes*, 571 S.W.3d 753 (Tex. 2019) .......................12

*De Gregorio v. CBS, Inc.*,
     123 Misc. 2d 491 (Sup. Ct. N.Y. Cty. 1984) .....................................................11

*Diesen v. Hessburg*,
     455 N.W.2d 446 (Minn. 1990) ..........................................................................22

*Dillon v. City of New York*,
     261 A.D.2d 34 (1st Dep't 1999) ............................................................9, 10, 15

*Donati v. Queens Ledger Newspaper Grp.*,
     240 A.D.2d 696 (2d Dep't 1997) .......................................................................13

*Duane Reade, Inc. v. Clark*,
     2 Misc. 3d 1007(A), (Sup. Ct. N.Y. Cty. 2004) ...............................................25

*Dykstra v. St. Martin's Press LLC*,
   2020 N.Y. Misc. LEXIS 2659 (N.Y. Sup. Ct. 2020) ....................................................20

*Golub v. Enquirer/Star Grp., Inc.*,
   89 N.Y.2d 1074 (1997) ..................................................................................................10

*Harman v. Heartland Food Co.*,
   614 N.W.2d 236 (Minn. Ct. App. 2000) ........................................................................15

*Herman v. CBS Corp.*, 2001 BL 1477, 30 Media L. Rep. 1029
   (Sup. Ct. N.Y. Cty. 2001) ..............................................................................................10

*Hewitt v. Wasek*,
   35 Misc. 2d 946 (Sup. Ct. Chemung Cty. 1962) ...........................................................11

*Horowitz v. Mannoia*,
   10 Misc. 3d 467 (Sup. Ct. Nassau Cty. 2005) ...............................................................21

*Immuno, A.G. v. Moor-Jankowski*,
   145 A.D.2d 114, *aff'd,* 74 N.Y.2d 548 (1989), *vacated,* 497 U.S. 1021 (1990),
   *aff'd,* 77 N.Y.2d 235 (1991), *cert. denied,* 500 U.S. 954 (1991) ................................24

*Jadwin v. Minneapolis Star & Trib. Co.*,
   390 N.W.2d 437 (Minn. Ct. App. 1986) ........................................................................15

*James v. Gannett Co.*,
   40 N.Y.2d 415 (1976) ................................................................................................9, 12

*Karaduman v. Newsday, Inc.*,
   51 N.Y.2d 531 (1980) .....................................................................................................24

*Kellar v. VonHoltum*,
   568 N.W.2d 186 (Minn. Ct. App. 1997) ..........................................................................9

*Kimmerle v. N.Y. Evening Journal*,
   262 N.Y. 99 (1933) .........................................................................................................11

*Kipper v. NYP Holdings Co.*,
   12 N.Y.3d 348 (2009) .....................................................................................................23

*Larson v. Albany Med. Ctr.*,
   252 A.D.2d 936 (3d Dep't 1998) ....................................................................................18

*Larson v. Gannett Co.*,
   915 N.W.2d 485 (Minn. Ct. App. 2018), *aff'd in part*, *rev'd in part*,
   940 N.W.2d 120 (Minn. 2020) .......................................................................................19

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (1992) ...................................................................................16, 17, 23

*Maethner v. Someplace Safe, Inc.*,
  929 N.W.2d 868 (Minn. 2019)....................................................................15, 22

*McKee v. Laurion*,
  825 N.W.2d 725 (Minn. 2013)...........................................................................10

*Mencher v. Chesley*,
  297 N.Y. 94 (1947) ...........................................................................................10

*Morrow v. Wiley*,
  73 A.D.2d 859 (1st Dep't 1980) ........................................................................12

*Muhlhahn v. Goldman*,
  93 A.D.3d 418 (1st Dep't 2012) ..........................................................................9

*Nichols v. Item Publishers, Inc.*,
  309 N.Y. 596 (1956) .......................................................................................2, 10

*Oleniak v. Slaton*,
  2014 WL 2151944 (Sup. Ct. N.Y. Cty. May 21, 2014)......................................12

*Pace v. Rebore*,
  107 A.D.2d 30 (1985) ........................................................................................21

*Pearlman v. NYP Holdings*,
  2015 WL 2232335 (Sup. Ct. N.Y. Cty. May 11, 2015)......................................20

*Purzak v. Hale*,
  1999 WL 35132673 (N.Y. Sup. Ct. June 02, 1999)............................................11

*Rappaport v. VV Publ'g Corp.*,
  163 Misc. 2d 1 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 223 A.D.2d 515
  (1st Dep't 1996) ..................................................................................................9

*Rejent v. Liberation Publ'ns, Inc.*,
  197 A.D.2d 240 (1st Dep't 1994) .......................................................................11

*Sackler v. ABC, Inc.*,
  2021 WL 969809 (Sup. Ct. N.Y. Cty. Mar. 9, 2021) ....................................22, 25

*Saunders v. Bd. of Directors, WHYY-TV (Channel 12)*,
  382 A.2d 257 (Del. Super. Ct. 1978) ................................................................14

*Schermerhorn v. Rosenberg*,
  73 A.D.2d 276 (2d Dep't 1988) ........................................................................10

*Schlieman v. Gannett Minn. Broad., Inc.*,
   637 N.W.2d 297 (Minn. Ct. App. 2001) ..........................................................10, 15

*Serratore v. Am. Port Servs., Inc.*,
   293 A.D.2d 464 (2d Dep't 2002) ...........................................................................9

*Smith v. Britton*,
   2014 WL 349742 (Minn. Ct. App. Feb. 3, 2014) .................................................24

*Stuempges v. Parke, Davis & Co.*,
   297 N.W.2d 252 (Minn. 1980) ...............................................................................10

*Tracy v. Newsday, Inc.*,
   5 N.Y.2d 134 (1959) ..............................................................................................10

*Wadsworth v. Beaudet*,
   267 A.D.2d 727 (3d Dep't 1999) ...........................................................................18

*Workman v. Serrano*,
   2006 WL 771580 (Minn. Ct. App. Mar. 28, 2006) ...............................................19

*Yonaty v. Mincolla*,
   97 A.D.3d 141 (3d Dep't 2012) .............................................................................10

**State Statutes**

N.Y. Civ. Rights Law § 70-a ...........................................................................1, 24, 25

N.Y. Civ. Rights Law § 76-a .........................................................................20, 21, 24

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 6, 7

**Other Authorities**

1 Hon. Robert D. Sack, Sack on Defamation § 2:4.18 ...............................................19

43A N.Y. Jur. 2d, Defamation and Privacy, § 23 ......................................................11

Restatement of the Law, Second, Torts 2d, § 573, cmt. c ..........................................17

Defendants Mail Media, Inc. ("MMI") and Laura Collins (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Michael Lindell's Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), and N.Y. Civil Rights Law §§ 70-a, 76-a.  Defendants also request an award of attorneys' fees, pursuant to Section 70-a.

## SUMMARY OF ARGUMENT

Plaintiff Michael Lindell is no stranger to scandal.  In the last year alone, the self-described crack-addict-turned-CEO ventured beyond pillow sales to become a peddler of an unproven COVID-19 "cure," and a leading proponent of baseless election fraud theories; stores dropped his company's product after Plaintiff was photographed leaving the White House in January 2021 with a notepad referencing "martial law."[1]  He and his company have been mired in litigation – previously, in several suits alleging fraudulent advertisement practices, and more recently, in a defamation suit arising from his false claims about election fraud.[2]  Yet Plaintiff (literally) has made a federal case out of statements in an article about his rumored consensual romantic relationship with a popular, award-winning actress, claiming that these references irreparably harmed his reputation.  His baseless defamation claim should be dismissed.

Plaintiff's lawsuit purports to arise from a January 21, 2021 article on the MailOnline website, which said that Plaintiff had a nine-month relationship with actress Jane Krakowski, in which he "wooed" her with romantic gestures like sending "flowers to her almost every week and champagne and bottles of different liquor" (the "Article").[3]  Plaintiff is the CEO of a company called MyPillow, and has become nationally known as the MyPillow Guy.  Krakowski

---

[1] *See* Declaration of Selina MacLaren ("MacLaren Decl."), Ex. B at 13–34, 39–49.

[2] *See* MacLaren Decl., Ex. B at 35–38, 43–49; Ex. C.

[3] *See* MacLaren Decl., Ex. A.

is an award-winning actress, best known for television programs such as *Unbreakable Kimmy Schmidt* and *30 Rock*. Neither one is married. As Plaintiff concedes, the Article reported that both he and Krakowski denied that there had been any relationship. Compl. ¶ 17.[4] Plaintiff nonetheless claims the Article defamed him by purportedly suggesting that he engaged in a "scandalous and clandestine" relationship; he also says that it was "highly injurious" to his reputation to state that he would "purchase liquor or champagne" for the actress. Compl. ¶ 14.

Meritless cases like this one, which arise from the exercise of First Amendment rights, should be dismissed at the earliest possible opportunity. *See* Section VI. For each of the reasons discussed below, Plaintiff's Complaint should be dismissed, without leave to amend.[5]

*First*, the statements in the Article are not capable of any defamatory meaning. As a matter of established constitutional and common law, a defamation claim does not arise merely because a statement made about the plaintiff allegedly is "false"; the allegedly false statement must assert a fact that would subject the plaintiff to hatred or contempt "in the minds of a substantial number of the community." *Nichols v. Item Publishers, Inc.*, 309 N.Y. 596, 600 (1956). None of the statements at issue here come close to meeting that requirement. The Article does not state or imply that Plaintiff engaged in any conduct that modern society would find objectionable – to the contrary, the only statements he complains about are innocuous, at worst, or even flattering. It simply is not defamatory to say that a high-profile couple's relationship was an "open secret," or to say that a suitor gave romantic gifts. Although Plaintiff tries to make much of his assertion that he is a recovering addict, the Article does not state – nor does it imply – that he was imbibing, nor would society subject an individual to hatred or

---

[4] Plaintiff inaccurately asserts that these denials were "buried" (Compl. ¶¶ 17-18); in fact, they were included in a prominent, bold sub-heading before the text of the Article began. *See* Ex. A at 1.

[5] As a threshold matter, New York law should be applied to this case. *See* Section I. Regardless of which state's law applies, however, Plaintiff's Complaint should be dismissed for the reasons set forth in this Memorandum.

contempt for giving champagne as a gift to another adult who is *not* an alcoholic.  *See* Section II.

*Second*, Plaintiff's claim must be dismissed because the challenged statements plainly do not fall within the narrow categories that constitute defamation *per se*.  Consequently, he was required to plead that those statements caused him to suffer special damages – which he did not (and cannot) do.  Plaintiff's conclusory assertion that the statements at issue somehow harmed his business or profession is devoid of any **facts** to support it; nor does such a contrived theory make sense – **none** of the contested statements relate to Plaintiff's performance as CEO of MyPillow, or to anything else about his "trade, business, or profession."  Compl. ¶ 30.  For this additional reason, his Complaint must be dismissed.  *See* Section III.

*Third*, Plaintiff's claims are barred by the incremental harm doctrine.  This doctrine precludes defamation claims where, as here, unchallenged statements in the publication at issue would be more likely to harm the plaintiff's reputation than the allegedly untruthful statements.  Here, Plaintiff does not contest the veracity of the Article's statements regarding his endorsement of bizarre conspiracy theories about the 2020 election, his embracing of fake "cures" for COVID-19, or the many prior lawsuits against him and his company.  MacLaren Decl., Ex. A.  It cannot be seriously argued that a report about him dating a high-profile actress would damage his reputation when compared to these statements, let alone when they are compared to the widespread negative publicity about him that preceded the Article at issue.  *See* Section IV.

*Finally*, Plaintiff has not pleaded facts sufficient to establish that the statements at issue were published with actual malice.  Under the First Amendment (and New York's SLAPP statute), Plaintiff must allege specific facts that would, if proven, satisfy his stringent burden of proving by clear and convincing evidence that the statements were published with knowledge of falsity or "reckless disregard" for their truth or falsity.  Plaintiff's reliance on his pre-publication

denial – which was prominently included in the Article – does not meet that burden.  *See* Section V.  For all of these reasons, Plaintiff's Complaint should be dismissed, without leave to amend.

## STATEMENT OF FACTS

### A.     The Parties

Plaintiff Michael Lindell alleges that he is a "recovering addict and alcoholic."  Compl. ¶ 2.  He alleges that he is domiciled in Minnesota, but frequently "writes and speaks publicly."  Compl. ¶¶ 2, 6.  He has been the subject of widespread, national media attention.  *See* MacLaren Decl., Ex. B.  Defendant MMI is a New York-based affiliate of Associated Newspapers Ltd. ("ANL"), a UK company that owns and publishes the news website MailOnline (accessible in the United States at https://www.dailymail.co.uk/ushome/index.html).  Laura Collins is a reporter for MailOnline, based in ANL's New York office.[6]

### B.     The Article

On January 21, 2021, in the midst of widespread news coverage about Plaintiff's January 15, 2021 visit to the White House, MailOnline published the Article at issue.  *See* MacLaren Decl., Ex. A.  The Article described Plaintiff as a "beleaguered 'Stop the Steal' Trump champion" who has been mired in legal action arising out of his alleged falsehoods.  Among other things, the Article reported that Plaintiff "[i]n recent days [ ] has been threatened with legal action by Dominion Voting Systems,"[7] and that he previously had "settled dozens of federal lawsuits across eight different states for fraudulent advertising and bogus claims of being a 'sleep

---

[6] The Complaint inaccurately refers to MMI as "Mail Media Inc. d/b/a Mail Online."  MMI does not own or publish the MailOnline website, and does not use "Mail Online" as a d/b/a.  *See* R. Doc. 1.  If this case were to proceed further, MMI would establish that it had no control over the Article at issue, and therefore cannot be held liable for its content.  *E.g.*, *Computersearch Corp. v. ECL Indus., Inc.*, 142 A.D.2d 961, 962 (4th Dep't 1988) ("[a] parent or affiliated corporation will not be held liable for the contractual obligation of a subsidiary or affiliate, unless it is exercising complete domination and control in the matter").  For purposes of this Motion, however, MMI presents legal arguments that justify dismissal of the lawsuit even if Plaintiff had named the correct entity.

[7] A lawsuit subsequently was filed, which is pending.  MacLaren Decl., Ex. C.

expert.'"  *Id*.  The Article described Plaintiff's widely-reported promotion of conspiracy theories related to election fraud, noting that he issued a "bizarre Rose Garden address" at the White House, "stolidly refused to accept that Trump lost the election," "attend[ed] rallies" in several states "in a bid to 'Stop the Steal,'" and "bizarrely [] claimed to have uncovered 'proof' that Trump had won ten million more votes than President elect Joe Biden."  *Id*.  The Article also stated that Plaintiff's "continued promotion of false claims of election fraud and apparent enthusiasm for martial law" had caused his business to suffer, as a "host of big box stores, [such] as Bed Bath & Beyond, Kohl's and Wayfair have all dropped his product."  *Id*.

This lawsuit is not about **any** of these statements.  Plaintiff does not challenge their accuracy, nor could he.[8]  Instead, Plaintiff has sued because the Article also reports that he and award-winning actress Jane Krakowski previously were in a romantic relationship.  *Id*.  Citing multiple unnamed sources, the Article reported that Plaintiff had a "nine month romance" with Krakowski that was an "open secret" in New York's West Village.  *Id*.  It quoted sources describing Plaintiff as having "wooed" Krakowski by "showering her with gifts and flowers," including "champagne and bottles of different liquor."  *Id*.  The Article said Krakowski saw Plaintiff as a "good man" and a "role model" for her son, but the relationship had ended.  *Id*.

### C.  Plaintiff's Lawsuit

On January 25, 2021, Plaintiff filed this lawsuit, asserting a single claim of defamation purporting to arise from the following statements:  (1) Plaintiff and Krakowski had "a secret nine month romance" (Compl. ¶ 12); (2) Plaintiff "wooed the actress for close to a year, showering her with gifts and flowers" (*Id*. ¶ 13); and (3) "He sent flowers to her almost every week and

---

[8] These matters were the subject of widespread press coverage preceding the Article.  *See* MacLaren Decl., Ex. B.

champagne and bottles of different liquor." (*Id.* ¶ 13).[9]

To support his claim, Plaintiff alleges that he is a "reverent family man prominent in his church community," "a recovering addict and alcoholic," and "an evangelical Christian … piously devoted to his religious faith," *id.* ¶¶ 2, 14.  He asserts he would "never purchase liquor or champagne, or foist alcohol on others," or "engage in any sort of scandalous, clandestine affairs," *id.* ¶ 14.[10]  He claims he founded a "platform" to help those struggling with addiction,[11] and says the three statements hurt his "ability to succeed in this important effort" (*id.* ¶ 5).

## ARGUMENT

Under Rule 12(b)(6), a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (internal quotation marks and alterations omitted).  Although a court must take "well-pleaded factual allegations" as true for purposes of a Rule 12(b)(6) motion, mere legal conclusions "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Lafaro v. New York City Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009) (same).  Where, as here, a plaintiff has not "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.[12]  Because Plaintiff's defamation

---

[9] The Complaint also references statements in the Article related to the ending of the rumored relationship (Compl. ¶¶ 12–13), but Plaintiff does not allege that these statements caused him any harm.  *See* Compl. ¶ 14.

[10] Plaintiff does not allege that he is married or in a relationship.  Public court records show that he has been divorced twice, most recently in 2014.  MacLaren Decl., Ex. E.

[11] According to publicly available records, this alleged "platform" is in the earliest stages of development.  As of August 2020, its website displayed a banner stating "Lindell Recovery Network Is Coming Soon"; the Charity Navigator website states that it has less than $50,000 in annual revenue.  MacLaren Decl., Ex. D.

[12] In addition to the Complaint, this Court may consider documents that were attached, incorporated by reference, or relied upon by Plaintiff in his pleading, and any judicially noticeable matters.  *See Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *In re Harbinger Capital Partners Funds Investor Litig.*, 2013 WL 5441754, at *15 n.6 (S.D.N.Y. Sept. 30, 2013), *vacated in part on recon. on other grounds*, 2013 WL 7121186 (S.D.N.Y. Dec. 16,

claim does not satisfy the Rule 12(b)(6) plausibility standard, nor can its defects be remedied, his Complaint should be dismissed in its entirety, with prejudice.

## I.  NEW YORK LAW APPLIES TO THIS CASE

As a threshold matter, this Court should apply New York law in this case.  "Federal courts sitting in diversity look to the choice-of-law rules of the forum state."  *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  Under New York's choice-of-law rules, "the first step … is to determine whether there is an 'actual conflict'" between the states' laws. *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419–20 (2d Cir. 2001) (citation omitted).  Here, there is no material conflict between New York and Minnesota law, because the defenses raised in the Motion – which derive from federal constitutional principles – are complete defenses in both states.[13]  Thus, this Court may apply the law of this jurisdiction.  *IBM Corp.*, 363 F.3d at 143 ("[i]n the absence of substantive difference" New York courts may apply New York law).[14]

To the extent any conflict exists between the laws of these two States, New York's substantive law still controls.  "In tort actions, New York courts apply the substantive law of the jurisdiction that has the most significant interest in the specific issue raised in the litigation."

---

2013).  Among other things, courts may take judicial notice of the contents of public records.  *Epstein v. N.Y. City Dist. Council of Carpenters Benefit Funds*, 2016 WL 1718262, at *2 (S.D.N.Y. Apr. 28, 2016) (Crotty, J.).  Those may include court records, docket sheets, website pages, and news articles.  *See, e.g.*, *Walker v. City of N.Y.*, 2014 WL 1259618, at *2 (S.D.N.Y. Mar. 18, 2014) (Crotty, J.) (judicial notice "may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions") (citations omitted); *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 234 n.4 (S.D.N.Y. 2019) (Crotty J.) (taking judicial notice of party's website); *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012) (taking judicial notice of "various Internet postings"), *aff'd*, 736 F.3d 528, 534 (D.C. Cir. 2013); *Garber v. Legg Mason, Inc*., 347 F. App'x 665, 669 (2d Cir. 2009) (taking judicial notice of press articles "to show that information [at issue] was publicly available").

[13] *See, e.g.*, *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 626 (8th Cir. 2012) (affirming dismissal of claim where statements lacked defamatory meaning under Minnesota law); *Van Buskirk v. The New York Times Co*., 325 F.3d 87, 93 (2d Cir. 2003) (same, applying New York law); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 188 (S.D.N.Y. 2020) (granting motion to dismiss where public figure plaintiff failed to show actual malice); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) (applying Minnesota law, affirming dismissal of defamation claim for failure to plausibly allege actual malice).

[14] *See also Verragio, Ltd. v. AE Jewelers, Inc.*, 2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) (applying New York law to defamation claim where Wisconsin and New York law did not conflict); *Deaton v. Napoli*, 2019 WL 156930, at *7 (E.D.N.Y. Jan. 10, 2019) (applying New York law to Rhode Island plaintiff's defamation claim).

*Adelson v. Harris*, 973 F. Supp. 2d 467, 476 (S.D.N.Y. 2013) (citation and internal quotation marks omitted), *aff'd*, 876 F.3d 413 (2d Cir. 2017); *see also Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (for defamation claim, situs of the tort should control).  Where multiple states are involved, courts do not simply look to the plaintiff's domicile.  *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) (citation omitted).  Instead, New York courts "weigh all the factors … includ[ing,] where [the] plaintiff suffered the greatest injury; where the statements emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply." *Condit v. Dunne,* 317 F. Supp. 2d 344, 353-54 (S.D.N.Y. 2004) (internal citations omitted).[15]

Here, Plaintiff alleges that he writes and speaks publicly, and that his alleged reputational harm was suffered globally.  Compl. ¶¶ 2, 5, 22–24.  The statements emanated from New York, and concerned a relationship that allegedly took place in New York.  *Id*. ¶¶ 7, 11.  New York courts consistently have recognized a strong policy interest in protecting publishers and journalists in the State, where both Defendants are located.  *Id*. ¶¶ 7-8; *see, e.g., Davis*, 580 F. Supp. at 1092-93 ("libel is less plaintiff-centered than other torts," and "New York, as the national center of the publishing industry, has a significant interest in assuring that the risks and liabilities flowing from publishing and related options contracts, negotiated and largely performed here, will be uniform."); *Machleder v. Diaz*, 801 F.2d 46, 52 (2d Cir. 1986) ("CBS

---

[15] Courts in this district also have employed a nine-factor test that looks to (1) the state of plaintiff's domicile; (2) the state of the plaintiff's principal activity to which the alleged defamation relates; (3) the state where the plaintiff suffered the greatest harm; (4) the state of the publisher's domicile or incorporation; (5) the state where the defendant's main publishing office is located; (6) the state of principal circulation; (7) the place of emanation; (8) the state where the libel was first seen; and (9) the law of the forum.  *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984) (citing *Palmisano v. News Syndicate Co.*, 130 F. Supp. 17 (S.D.N.Y. 1955)).  Use of these factors is not controlling, but may provide guidance.  *Condit*, 2008 WL 2676306 at *3 n.4 (noting court "looks to the nine-factor test ... not as definitive statements of New York law, but as guidance consonant with the body of New York law on multistate defamation cases." (internal citation and quotation marks omitted)).  Here, the second, fifth, seventh, and ninth factors weigh in favor of New York.  Only one factor (the first) favors Minnesota.

accurately asserts that New York has a strong interest in this litigation" given its operations in New York); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 2007 WL 4820968, at *5 (S.D.N.Y. Sept. 18, 2007) (same); *Condit*, 317 F. Supp. 2d at 353 (same principle applies "even when the target of the statement lives in another state").

The Second Circuit recently applied these factors to a multistate defamation claim arising from a *New York Times* article about events that took place in the District of Columbia. *Kinsey v. New York Times Co.*, 991 F.3d 171, 177–78 (2d Cir. 2021). Although the plaintiff alleged that the article harmed his employment in D.C., the Court held that New York law applied, because *The Times* is domiciled in New York and the statements at issue emanated from there. *Id.* Here, there is no allegation that Plaintiff suffered harm in Minnesota. Compl. ¶ 5. Instead, he asserts that his reputation was harmed "throughout" the U.S. "and the world." *Id.* ¶ 24. Thus, even if a conflict exists between New York and Minnesota law, New York substantive law applies here.

## II.    THE STATEMENTS ARE NOT DEFAMATORY AS A MATTER OF LAW

To state a libel claim, it is not sufficient for a plaintiff to allege a false statement of fact; the statement also must be defamatory. *See, e.g., Rappaport v. VV Publ'g Corp.*, 163 Misc. 2d 1, at *5 (Sup. Ct. N.Y. Cty. 1994) ("the language complained of must be reasonably susceptible of a defamatory meaning as to the plaintiff"), *aff'd*, 223 A.D.2d 515 (1st Dep't 1996).[16]  This means that the statement must "expose a person to hatred, contempt or aversion, or to induce an evil or

---

[16] Whether a statement is capable of a defamatory meaning is a threshold question of law for this Court to determine. *Aronson v. Wiersma*, 65 N.Y.2d 592, 593-94 (1985); *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976). New York courts routinely grant pre-answer motions to dismiss where, as here, the challenged statements are not capable of a defamatory meaning. *E.g., Muhlhahn v. Goldman*, 93 A.D.3d 418 (1st Dep't 2012); *Ava v. NYP Holdings, Inc.*, 64 A.D.3d 407 (1st Dep't 2009); *Serratore v. Am. Port Servs., Inc.*, 293 A.D.2d 464 (2d Dep't 2002); *Dillon v. City of New York*, 261 A.D.2d 34 (1st Dep't 1999); *Christopher Lisa Matthew Policano, Inc. v. N. Am. Precis Syndicate, Inc.*, 129 A.D.2d 488 (1st Dep't 1987); *Alfajr Printing & Publ'g Co. v. Zuckerman*, 230 A.D.2d 879 (2d Dep't 1996). Minnesota courts do the same. *E.g., Kellar v. VonHoltum*, 568 N.W.2d 186, 191, 193 (Minn. Ct. App. 1997) (affirming dismissal; "whether a claimed defamatory meaning is reasonably conveyed by the language used is a question of law to be determined by the court."); *Turkish Coal.*, 678 F.3d at 626 (same).

unsavory opinion of him in the minds of a substantial number of the community."  *Nichols*, 309

N.Y. at 600; *see also Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (1997).[17]  The

language must be read in context; "courts will not strain to find a defamatory interpretation

where none exists."  *Cohn v. NBC*, 50 N.Y.2d 885, 887 (1980); *see also Dillon*, 261 A.D.2d at 38

(same); *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 136 (1959) (courts "may not enlarge upon the

meaning of words so as to convey a meaning that is not expressed.").

        Here, none of the statements Plaintiff complains about – describing a rumored romantic

relationship, and stating that he gave gifts to Krakowski that included alcohol – are reasonably

susceptible to a defamatory meaning.  For this reason alone, his claim fails.

### A.    Stating Unmarried Adults Had A Consensual Relationship Is Not Defamatory

        In evaluating whether a statement is capable of a defamatory meaning, courts consider

the effect it would have on the "ordinary" person.  *McKee*, 825 N.W.2d at 731 ("[w]hether

a defamatory meaning is conveyed depends upon how an ordinary person understands 'the

language used in the light of surrounding circumstances.'") (citation omitted).  This evaluation

also must take into account contemporary mores and attitudes.  *See Schermerhorn v. Rosenberg*,

73 A.D.2d 276, 284-85 (2d Dep't 1988) (whether language is defamatory "depends … upon the

temper of the times, the current of contemporary public opinion") (quoting *Mencher v. Chesley*,

297 N.Y. 94, 100 (1947)).[18]  Applying these principles, courts repeatedly have held that it is not

---

[17] The same standard applies in Minnesota.  *See Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980) (for defamation, statement must tend to "harm the plaintiff's reputation and … lower him in the estimation of the community"); *McKee v. Laurion*, 825 N.W.2d 725, 731 (Minn. 2013) (no defamation claim where statements were not "capable of conveying a defamatory meaning"); *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 302 (Minn. Ct. App. 2001) (Minnesota law requires that "statements convey[] a defamatory meaning").

[18] Courts have recognized in numerous ways how these standards evolve as society changes.  *See, e.g.*, *Yonaty v. Mincolla*, 97 A.D.3d 141, 144, 146 (3d Dep't 2012) (given "tremendous evolution in social attitudes regarding homosexuality," false imputations of homosexuality are no longer defamatory *per se*); *Stern v. Cosby*, 645 F. Supp. 2d 258, 274 (S.D.N.Y. 2009) (same) (applying New York law); *Herman v. CBS Corp.*, 2001 BL 1477, 30 Media L. Rep. 1029 (Sup. Ct. N.Y. Cty. 2001) (in today's society, statement that man is using Viagra is not libel *per se*).

defamatory to describe consenting adults as being in a romantic – or even sexual – relationship. *See*, *e.g.*, *Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 227 (E.D. Va. 1990) (statement that unmarried plaintiffs were "live-in lovers" is not defamatory because "in the context of today's social mores, [it] cannot be said to [suggest] behavior involving moral depravity or deviation"), *aff'd*, 923 F.2d 848 (4th Cir. 1991); *Purzak v. Hale*, 1999 WL 35132673 (N.Y. Sup. Ct. June 02, 1999) (statement that plaintiff "continued a relationship with a former companion" while engaged was not susceptible to a defamatory meaning; "'to be actionable, charges of unchastity must contain specific references to sexual misconduct; imputations that are merely suggestive are not sufficient.'" (*quoting* 43A N.Y. Jur. 2d, Defamation and Privacy, §23)); *Rejent v. Liberation Publ'ns, Inc*., 197 A.D.2d 240, 244–45 (1st Dep't 1994) (to be actionable, statement must impute "sexual misconduct").

Courts have held that even publications alluding to extramarital affairs (which the Article here certainly does *not)* do not convey a defamatory meaning.[19]  *See*, *e.g.*, *Kimmerle v. N.Y. Evening Journal*, 262 N.Y. 99, 102-03 (1933) (statement that plaintiff was "court[ed]" by a man who had recently married another woman not defamatory).  Even lurid accusations of sexual conduct have fallen short of meeting the requirement of conveying a defamatory meaning. For example, in *Bement v. N.Y.P. Holdings, Inc*., 307 A.D.2d 86, 92 (1st Dep't 2003), the First Department upheld dismissal of a libel claim where an article claimed the plaintiff "slept with" foreign officials while working as a CIA spy during the Cold War, finding that "the article was

---

[19] Courts have come to the same conclusion in evaluating whether statements were defamatory *per se*.  *See*, *e.g.*, *Hewitt v. Wasek*, 35 Misc. 2d 946, 947-48 (Sup. Ct. Chemung Cty. 1962) (statement that married woman "was keeping company with and having an affair with a married man" was not slanderous *per se* because it "d[id] not necessarily connote sexual intimacy"); *De Gregorio v. CBS, Inc.*, 123 Misc. 2d 491, 497 (Sup. Ct. N.Y. Cty. 1984) (broadcast titled "Couples in Love in New York," which showed plaintiff holding hands with female co-worker and described them as "hard-hat lovers" was not libelous *per se* and did not impute unchastity, although plaintiff was married and co-worker was engaged, because report did not state it was illicit relationship).  *See also* Section III.

vague and/or ambiguous" as to whether the plaintiff engaged in unchaste behavior.[20]

Despite this well-established law, Plaintiff claims the Article defamed him by suggesting that he "seduc[ed] and carr[ied] on a torrid love affair" with Krakowski, Compl. ¶ 1, and he complains that the Article portrays him as a "secretive or sordid person," *id.* ¶ 14(c). But the Article does not say, and cannot be reasonably read to imply, **either** of these things. The Article's description of a "nine month romance" in which Plaintiff "shower[ed Krakowski] with gifts and flowers" does not impugn Plaintiff's character, nor does it state or suggest anything about sexual conduct – let alone the kind of **mis**conduct required for defamatory meaning. Nothing about a romantic relationship between consenting adults conveys anything negative about Plaintiff, and certainly does not rise to the level of causing "hatred" or "contempt."

Plaintiff's complaint that he is portrayed as "secretive" is even more absurd. The Article refers to the relationship as an "'open secret' in New York's West Village," where they were "regularly seen in each other's company," conveying the precise opposite of a "clandestine" relationship. But even the reference to a relationship being kept "secret" does not convey impropriety, nor would it by any reasonable measure cause "hatred" or contempt. *See, e.g.*, *D Mag. Partners, L.P. v. Reyes*, 565 S.W.3d 38, 47 (Tex. App. 2017) (article stating plaintiff "had a mysterious past" and "duped Dallas society" was not actionable even though statements "undoubtedly hurt his feelings" and suggested he did not fit in to Dallas society), *aff'd in relevant part sub nom. Dallas Symphony Ass'n v. Reyes*, 571 S.W.3d 753 (Tex. 2019). *Compare*

---

[20] *See also Oleniak v. Slaton*, 2014 WL 2151944 (Sup. Ct. N.Y. Cty. May 21, 2014) (not actionable to state plaintiff had a child out of wedlock and was a "player" with "an old shoe box … full of pictures … of various women"); *James*, 40 N.Y.2d at 420 (quoting female belly dancer as stating "[m]en is my business," and claiming she "sold her time to lonely old men," was not defamatory as a matter of law, and did not infer prostitution); *Morrow v. Wiley*, 73 A.D.2d 859, 859 (1st Dep't 1980) (not actionable to state plaintiff "often had men visitors to her apartment when her parents weren't home"); *Cassini v. Advance Publ'ns*, 41 Misc. 3d 1202(A), at *2 (Sup. Ct. N.Y. Cty. Mar. 14, 2013) (not actionable to state plaintiff was known for throwing parties for wealthy older men who were "looking for action"), *aff'd*, 125 A.D.3d 467 (1st Dep't 2015).

*Donati v. Queens Ledger Newspaper Grp.*, 240 A.D.2d 696, 696-97 (2d Dep't 1997) (statement about parties' "10-year clandestine **adulterous** relationship" was defamatory) (emphasis added)).

Plaintiff's assertion that it was "insulting" to suggest that he kept his dating life private (Compl. ¶ 14(a)) does not make it defamatory; the allegation must subject him to "hatred, contempt or aversion" or give rise to "an evil or unsavory opinion" among ordinary people. *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 360–61 (S.D.N.Y. 1998) (applying New York law) (citation omitted).  As the Second Circuit stated, "[t]he law of defamation in New York is predicated on the free exchange of ideas and viewpoints. That marketplace can wound one's pride – for words can offend or insult – but simple slights are not the stuff of defamation." *Chau v. Lewis*, 771 F.3d 118, 131 (2d Cir. 2014).[21]  This Court should find that the statements at issue about Plaintiff's rumored relationship with Jane Krakowski are not actionable as a matter of law.

### B.   Stating An Adult Gave Alcohol As A Gift To Another Adult Is Not Defamatory

In the context of contemporary norms, it also is not defamatory to state that an adult gave champagne or another gift containing alcohol to another adult; it is both legal and commonplace. Instead, in his strained attempt to concoct a defamation claim, Plaintiff asserts ambiguously that the statement tarnished his reputation "in the field of addiction recovery as well as in religious communities."  Compl. ¶ 5.  But nothing in the Complaint suggests – let alone "plausibly" alleges – that "religious communities" forbid giving alcohol as a gift, or even that the vaguely-described "field of addiction recovery" prohibits doing so where the recipient is not an alcoholic. *Twombly*, 550 U.S. at 570.  It is not enough for Plaintiff to be offended; he must plausibly allege that the statement is susceptible to a meaning that damages his reputation in the minds of

---

[21] *See also Krumholz v. Fluid Mechanisms of Hauppauge, Inc.*, 1989 WL 62353, at *2 (E.D.N.Y. June 5, 1989) ("'offenses of a minor nature, such as name-calling or angry looks, are not actionable though they may wound the feelings of the victim and cause some degree of emotional upset. This is because the law has no cure for trifles.'") (citation omitted).

reasonable people.  Gifting champagne to a romantic partner does not meet that standard.

Courts consistently have rejected efforts to create defamatory meaning by relying on speculative moral judgments of a small segment of society.  *See Peck v. Trib. Co.*, 214 U.S. 185, 190 (1909) (a defamatory statement must "hurt [one's] standing with a considerable and respectable class in the community"); *Saunders v. Bd. of Directors, WHYY-TV (Channel 12)*, 382 A.2d 257, 259 (Del. Super. Ct. 1978) ("[i]t is not one's reputation in a limited community in which attitudes and social values may depart substantially from those prevailing generally which an action for defamation is designed to protect.").[22]  Thus, even if Plaintiff's religious and substance abuse communities forbid the gifting of alcohol – which the Complaint **does not allege** – that would not suffice to create judicially cognizable defamatory meaning here.[23]

Notably, the Article did not state, or even suggest, that Plaintiff drank alcohol; to the contrary, it made clear that he was a recovered alcoholic.  No contrary meaning can be reasonably implied.  *See Chau*, 771 F.3d at 132 ("error" for court to "emphasize[] the

---

[22] Descriptions of behavior that are acceptable in broader society are not defamatory, even in circumstances where a smaller community might view the conduct differently.  *See, e.g., Agnant v. Shakur*, 30 F. Supp. 2d 420, 425 (S.D.N.Y. 1998) (dismissing defamation claim based on allegation that rapper Tupac Shakur falsely called plaintiff an informant in rap lyrics, citing lack of defamatory meaning); *Connelly v. McKay*, 176 Misc. 68, 687 (Sup. Ct. N.Y. Cty. 1941) (dismissing libel claim by service station owner for statement that he reported truck driver patrons to the Interstate Commerce Commission; although court assumed statement caused him to lose business in his niche industry, statement lacked defamatory meaning).  *Accord Stern*, 645 F. Supp. 2d at 274 (considering whether there was "widespread disapproval of homosexuality in New York" in deciding whether statement was defamatory).

[23] Assuming it is relevant at all, Plaintiff's allegation that his "religion" impacts the defamatory nature of the statements warrants dismissal.  Courts repeatedly have held that if issues of religious doctrine must be examined to determine if a statement is defamatory, the claim should be dismissed, because the Establishment Clause does not permit such judicial intrusion into ecclesiastical concerns.  *See, e.g., Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 250 (S.D.N.Y.)  (in a libel suit, "where a court or jury 'would have to determine the truth of the defendants' statements ... and, in doing so, would examine and weigh competing views of church doctrine,' the result is entanglement 'in a matter of ecclesiastical concern' that is barred by the First Amendment"), *aff'd*, 578 F. App'x 24 (2d Cir. 2014); *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 413 (S.D.N.Y. 2019) ("[b]ecause the Court may not, consistent with the First Amendment, pass upon the truth or falsity of statements concerning [a party's] purported religious standing, plaintiff's remaining defamation claim must be dismissed."), *aff'd as modified sub nom. Moon v. Moon*, 833 F. App'x 876 (2d Cir. 2020).  *See also Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200, 219 (D. Conn. 2000) (dismissing libel claims where adjudication would require court to determine plaintiff's clerical status); *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732 (D.N.J. 1999) (First Amendment bars examining defamatory character of statements that plaintiff was bigamist for failing to obtain religious divorce because it required delving into church doctrine), *aff'd*, 263 F.3d 158 (3d Cir. 2001).

implication, perceived tone, and innuendo" of statements that are non-defamatory); *see also Jadwin v. Minneapolis Star & Trib. Co.*, 390 N.W.2d 437, 443 (Minn. Ct. App. 1986) ("[t]he defamatory character of any particular statement must be construed in the context of the article as a whole." (citation omitted)); *Schlieman v. Gannett Minnesota Broadc., Inc.*, 637 N.W.2d 297, 304 (Minn. Ct. App. 2001) (same).  Nor would it be defamatory in any event.[24]

Because there is no plausible interpretation of the statements that would subject Plaintiff to hatred or contempt in contemporary society, his defamation claim fails as a matter of law.

## III.   THE STATEMENTS AT ISSUE ARE NOT DEFAMATORY *PER SE*, AND PLAINTIFF FAILS TO PLEAD SPECIAL DAMAGES

Plaintiff's claim fails for another, independent reason:  the statements at issue here do not constitute defamation *per se,* and Plaintiff failed to allege special damages.  To plead a cause of action for defamation under New York law, the statement at issue "must either cause special harm or constitute defamation per se."  *Dillon*, 261 A.D.2d at 38 (dismissing libel claim); *accord Maethner v. Someplace Safe, Inc*., 929 N.W.2d 868, 875 (Minn. 2019).  Whether a statement is defamatory *per se* is a question of law for the court.  *Stern*, 645 F. Supp. 2d at 288 (applying New York law); *see also Harman v. Heartland Food Co.*, 614 N.W.2d 236, 240 (Minn. Ct. App. 2000) (same).  At common law, courts recognized four categories of statements as "defamation *per se*":  "(1) those that accuse the plaintiff of a serious crime; (2) those that 'tend to injure another in his or her trade, business or profession'; (3) those that accuse the plaintiff of having a 'loathsome disease'; or (4) and those that impute 'unchastity to a woman.'"  *Stern*, 645 F. Supp.

---

[24] *E.g.*, *Oakley v. Dolan*, 2020 WL 818920, at *12 (S.D.N.Y. Feb. 19, 2020) (not defamatory to state someone is an alcoholic), *aff'd in relevant part*, 833 F. App'x 896 (2d Cir. 2020); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 694 n.4, 695 (9th Cir. 1998) (not defamatory to suggest former major league baseball pitcher and recovering alcoholic participated in a beer advertisement); *Alvarado v. K-III Mag. Corp.*, 203 A.D.2d 135, 136–37 (1994) (dismissing claim that publication denoted plaintiffs' participation in underage drinking, and stating, "the imputation of drunkenness is libelous only when accompanied by some aggravating factor not present here").  *See also Milkovich v. Lorain J. Co*., 497 U.S. 1, 27 n.3 (1990) (whether statement "I think C must be an alcoholic" is defamatory depends on "whether reasonable readers" interpreted it "as implying defamatory facts")

2d at 273 (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)).  None are applicable here.

The **only** allegation in the Complaint that even attempts to address this issue is the conclusory assertion that the statements at issue "tend to injure Mr. Lindell in his trade, business or profession."[25]  Compl. ¶ 30.  To rise to the level of defamation *per se*, however, the statements would have to directly implicate Plaintiff's ability to "perform" his "cognizable trade."  *Oakley*, 833 F. App'x at 900.[26]  Even statements that impugn a person's "character or qualities" do not meet this strict standard.  *Liberman*, 80 N.Y.2d at 436 (statements must be "incompatible with the proper conduct of the business, trade, profession or office itself," and "must be made with reference to a matter of significance and importance for that purpose"); *see also Anderson*, 262 N.W.2d at 372 (statements must relate to plaintiff's "occupation," and "to the person in his professional capacity and not merely as an individual"; "[g]eneral disparagement is insufficient").  Instead, statements must be specific to the plaintiff's particular occupation.  *Id*.

*Oakley* is particularly instructive.  There, Charles Oakley, a former basketball player for the New York Knicks, sued the team's owner, James Dolan, for accusing Oakley of having a "problem with alcohol," being drunk at a game, and assaulting the team's security personnel. *Oakley*, 833 F. App'x at 898-99.  Unlike Plaintiff here, Oakley expressly alleged that the defamation caused him to lose a scheduled paid appearance at an addiction clinic.  *Id*. at 900. Nonetheless, the Second Circuit held the allegations failed to state a claim for defamation *per se* because the statements did not relate to his "trade" as a former athlete.  *Id*. at 900-01. *See also Mennella v. Am. Airlines, Inc.*, 2019 WL 1429636, at *3 (S.D. Fla. Mar. 29, 2019) (not

---

[25] Plaintiff has not asserted defamation *per se* on the basis of sexual unchastity, nor could he, for the reasons stated in Section II, *supra*.  Moreover, defense counsel are unaware of any reported decisions where an adult man successfully claimed defamation *per se* for a statement that he had a consensual relationship with a single woman.

[26] *See also Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn. 1977) (statements must be "peculiarly harmful to the person *in his business*" to constitute defamation per se) (emphasis added).

defamatory *per se* for flight attendant to call businessman "a drunk," "drunk and disorderly," and "extremely intoxicated," even though the statements affected his professional credibility among fellow passengers flying to a conference – because statements were made without reference to his employment), *aff'd*, 824 F. App'x 696 (11th Cir. 2020).

Plaintiff's claim is even more attenuated.  He is the CEO of a pillow company.  *See* Statement of Facts, *supra*.  Statements that he had a romantic relationship have no effect on his ability to perform this professional role.  *Accord Dellefave v. Access Temporaries, Inc.*, 2001 WL 25745 (S.D.N.Y. 2001) (statement alleging person is in consensual relationship with co-worker had no bearing on employee's fitness to accomplish his job).  Plaintiff's attempt to recast his "profession" as involving addiction treatment, based on his alleged plan to form a charitable foundation, does not change this result.  His "foundation" is a nascent charitable endeavor; it plainly is not his "business, trade, or profession."  *See* Statement of Facts, *supra*; note 11.

Plaintiff's religious beliefs also cannot satisfy this requirement; neither his church nor his religion are his profession.  Indeed, courts explicitly have recognized that even accusations of "moral misconduct" would only be defamatory *per se* if lodged against a "clergyman," and not if lodged against a businessman like Plaintiff.  *Liberman*, 80 N.Y.2d at 436 ("charges against a clergyman of drunkenness and other moral misconduct affect his fitness for the performance of the duties of his profession, although the same charges against a business man or tradesman do not so affect him") (quoting Restatement § 573, cmt. *c*).  The statements here have nothing to do with Plaintiff's ability to perform his job as CEO of a pillow company (or even to run a charity).

Because the plain language of the Article is not defamatory *per se*, Plaintiff was required to plead special damages to avoid dismissal.  *See Lian v. Sedgwick James of N.Y., Inc.*, 992 F. Supp. 644, 649 (S.D.N.Y. 1998).  "Special damages are those which flow directly from the

injury to a plaintiff's reputation caused by the defamation and which involve the loss of something having economic or pecuniary value." *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 2003 WL 22410623, at *4 (S.D.N.Y. Oct. 21, 2003). *See also Wadsworth v. Beaudet*, 267 A.D.2d 727 (3d Dep't 1999) (affirming dismissal of defamation claims for failure to plead special damages). A general allegation that a plaintiff has suffered damages, such as loss of business opportunities, does not suffice. *Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227, at *12 n.3 (S.D.N.Y. June 3, 2008); *see also Larson v. Albany Med. Ctr.*, 252 A.D.2d 936, 939 (3d Dep't 1998) (dismissing libel claim where plaintiff alleged damages of $5 million instead of "itemized" special damages)).

Plaintiff's Complaint does not come close to meeting this requirement. He vaguely asserts loss of "prospective economic opportunities," and claims, without any specific facts or explanation, that his "ability to succeed" in running a non-profit addiction recovery platform could be affected by the Article. This type of speculative, prospective future loss falls far short of the requisite "specific instances of pecuniary loss." *Lian*, 992 F. Supp. at 649. Because none of the statements at issue constitute defamation *per se,* and because Plaintiff failed to plead special damages, his lawsuit must be dismissed. *See Aronson v. Wiersma*, 65 N.Y.2d 592, 595 (1985) (affirming dismissal of defamation claim where plaintiff failed to plead special damages).

## IV.    THE INCREMENTAL HARM DOCTRINE BARS PLAINTIFF'S CLAIM

Under the incremental harm doctrine, "when unchallenged or non-actionable parts of a publication are damaging, an additional statement, even if maliciously false, might be non-actionable because it causes no appreciable additional harm." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 176 (2d Cir. 2001); *see also Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986) (doctrine "measures the incremental harm inflicted by the challenged statements beyond the harm imposed by the rest of the publication. If that harm is determined to be nominal or

nonexistent, the statements are dismissed as not actionable.").[27]  The doctrine "is based upon the view that some wrongs simply should not be actionable primarily because society is better off avoiding the costs associated with litigation where the harm suffered is incremental."  *Jewell*, 23 F. Supp. 2d at 392 (applying New York law).  A court may apply this doctrine to dismiss a defamation claim at the pleadings stage.  *Id.* at 395 (citing *Lando*, 781 F.2d at 309-12; *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 516 F. Supp. 742, 750-51 (S.D.N.Y. 1981)).[28]

Here, Plaintiff does not – and cannot – challenge statements in the Article that accurately described him as a "beleaguered 'Stop the Steal' Trump champion" who has been "threatened with legal action by Dominion Voting Systems and dumped by a host of big box stores … in the wake of the crack addict turned CEO's continued promotion of false claims of election fraud and apparent enthusiasm for martial law."  MacLaren Decl., Ex. A.  Nor does he dispute the statement that he "settled dozens of federal lawsuits across eight different states for fraudulent advertising and bogus claims of being a 'sleep expert,'" or statements describing his "bizarre" public appearances.  MacLaren Decl., Ex. A.  The few allegedly false statements identified in the Complaint, concerning a rumored romantic relationship between two consenting single adults, could not conceivably cause harm to Plaintiff's reputation given the unchallenged statements in the Article that he promoted false claims of election fraud and a fake COVID-19 cure, advocated

---

[27] *See also* 1 Hon. Robert D. Sack, SACK ON DEFAMATION § 2:4.18 at 2-95 & n.357 (if publication "contains enough true or unchallenged derogatory material" about plaintiff "so that additional defamatory statements … do not add materially to the overall defamatory impact of the statement,… [it] is not actionable.")

[28] Both the Minnesota Supreme Court and Court of Appeals have suggested strongly that this doctrine would be recognized under Minnesota law.  *See Carradine v. Minnesota*, 511 N.W.2d 733, 737 (Minn. 1994) (stating, in connection with remand, "if a jury properly might find that the additional statements **significantly added** to any injury sustained by the plaintiff over and above any injury sustained as a result of the absolutely privileged statements, then plaintiff should be allowed to proceed to trial ...; **otherwise, not**") (emphases added); *Workman v. Serrano*, 2006 WL 771580, at *4 n.4 (Minn. Ct. App. Mar. 28, 2006) (noting Minnesota Supreme Court "indicated that the doctrine may apply"; thus "we leave it to the district court on remand to determine whether the [] statement, read in the context of the entire editorial, created an injury that is too small to have contributed to any injury to respondent's reputation"); *Larson v. Gannett Co.*, 915 N.W.2d 485, 500 (Minn. Ct. App. 2018) (applying incremental harm doctrine), *aff'd in part, rev'd in part*, 940 N.W.2d 120 (Minn. 2020) (not reaching issue).

for the imposition of martial law, and settled dozens of fraudulent advertising lawsuits.[29]  The

incremental harm doctrine warrants immediate dismissal.

## V.  PLAINTIFF FAILED TO ADEQUATELY PLEAD ACTUAL MALICE

Even if Plaintiff could overcome the hurdles described above, his defamation claim still

fails.  Under controlling constitutional principles and New York law, Plaintiff must plead facts

sufficient to demonstrate that each allegedly defamatory statement was published with actual

malice, *i.e.*, "with knowledge of its falsity or with reckless disregard of whether it was false."

N.Y. Civ. Rights Law § 76-a(2); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)

(public figure plaintiffs must plead and prove "actual malice").  Plaintiff's Complaint does not

come close to meeting this strict standard.

*First*, there is no question that the actual malice standard applies here.  Under controlling

federal constitutional law, public figures – like Plaintiff – are subject to higher standards of proof

in defamation cases.  *Sullivan*, 376 U.S. at 283.  Courts evaluate whether a plaintiff is a public

figure based on his or her "general fame or notoriety in the community, and pervasive

involvement in the affairs of society."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974).

"Those who have voluntarily sought and attained influence or prominence in matters of social

---

[29] *See*, *e.g.*, *Pearlman v. NYP Holdings*, 2015 WL 2232335, at *3 (Sup. Ct. N.Y. Cty. May 11, 2015) (granting motion to dismiss where allegedly defamatory statements "cannot conceivably cause any meaningful harm beyond the admitted truth that she is guilty of committing a serious felony"); *Jones v. Globe Int'l, Inc*., 1995 WL 819177, at *10-11 (D. Conn. Sept. 26, 1995) (challenged statements about criminal activity and a "bizarre love obsession" with women's shoes was not actionable because they did "not add materially to the injury caused by the truths in the articles, to wit, Jones' conviction for burglary and possession of ... stolen property."); *Galu v. SwissAir: Swiss Air Transp. Co*., 1987 WL 15580, at *5 (S.D.N.Y. Aug. 3, 1987) (false statement that plaintiff was a "prisoner" dismissed on incremental harm grounds where statement accurately described plaintiff as "criminal").

These decisions are consistent with case law holding that a plaintiff whose reputation was so tarnished prior to the publication at issue that he could not be further injured, cannot state a claim for defamation.  *E.g.*, *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 352 (S.D.N.Y. 1998) (finding member of organized crime was libel-proof); *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303–04 (2d Cir. 1986) (plaintiff was libel-proof on the topic of adultery); *Dykstra v. St. Martin's Press LLC*, 2020 N.Y. Misc. LEXIS 2659, 29 (N.Y. Sup. Ct. 2020) (plaintiff's reputation as "racist, misogynist, and anti-gay," and "a sexual predator, a drug-abuser, a thief, and an embezzler" precluded his defamation claim).  These principles aptly apply here.  *See* notes 1–2, 8, *infra*.

concern are generally considered public figures." *Celle v. Filipino Reporter Enters. Inc.*, 209

F.3d 163, 176 (2d Cir. 2000) (radio commentator within the Metropolitan Filipino-American

community was public figure); *see also Horowitz v. Mannoia*, 10 Misc. 3d 467, 469-70 (Sup. Ct.

Nassau Cty. 2005) ("test" for public figure status "involves name recognition, previous press

coverage, the voluntariness of plaintiff's prominence and the availability of self-help through

press coverage."). Here, Plaintiff describes himself as a public speaker and writer, Compl. ¶ 2,

and there can be no dispute that he attained national notoriety prior to the Article's publication,

with his voluntary media appearances and political activism. *See* Statement of Facts, *supra*.[30]

This same heightened standard also applies independently under New York law. The

Article is the type of "lawful conduct in furtherance of the exercise of the constitutional right of

free speech in connection with an issue of public interest" that the newly-amended SLAPP

statute was intended to protect. N.Y. Civ. Rights Law § 76-a(1)(a)(2). The statute requires that

"public interest" be construed broadly, as encompassing all but "purely private" matters. *Id*.

§ 76-a(1)(d). Plaintiff's status as a nationally known political figure and businessman more than

adequately meets this criteria. *See Palin v. New York Times Co.*, 2020 WL 7711593, at *3

(S.D.N.Y. Dec. 29, 2020) (noting it is "undisputed" that the amended SLAPP statute applies to

---

[30] *See, e.g., Rebozo v. Washington Post Co.*, 637 F.2d 375, 379-80 (5th Cir. 1981) (President Nixon's "friend," who played role in Nixon's reelection campaign and was subject of media coverage, was public figure; media coverage "focused both upon his relationship to the President and upon his own business and personal affairs"); *Buchanan v. Associated Press*, 398 F. Supp. 1196, 1203 (D.D.C. 1975) (accountant who assisted in presidential reelection campaign was a public figure). *See also McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020) (twelve-year-old supporter of former President Trump was limited purpose public figure because "[h]e 'voluntarily inject[ed] himself' into the political controversies surrounding President Trump … and enjoys 'significantly greater access to the channels of effective communication' than his peers." (citation omitted)). Plaintiff here also is a prominent CEO who promotes his company, and has injected himself into public controversy. *See Greenbelt Co-op. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 9 (1970) (prominent real estate developer was public figure); *Pace v. Rebore*, 107 A.D.2d 30, 33 (1985) ("prominent local businessman, who has also previously been involved in matters of public controversy" was public figure); *Girod v. El Dia, Inc.*, 668 F. Supp. 82, 85 (D.P.R. 1987) ("when the entrepreneur exhibits an active and public ostentation of his role within the business … community, as well as the social and political spheres, he becomes, under those circumstances, a public figure." (citing *Waldbaum v. Fairchild Publs., Inc.*, 627 F.2d 1287 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 898 (1980)).

"public figures" like the politician plaintiff).  In addition, the topic of the Article is of public

interest.  "New York law considers a matter of public concern as 'a dispute that in fact has

received public attention because its ramifications will be felt by persons who are not direct

participants.'"  *Coleman v. Grand*, 2021 WL 768167, at *8 (E.D.N.Y. Feb. 26, 2021) (citation

omitted) (allegations of saxophonist's sexual impropriety, in email circulated to 40 friends and

industry colleagues, met public interest requirement); *Albert v. Loksen*, 239 F.3d 256, 269 (2d

Cir. 2001) (noting "extremely broad interpretation of that [public interest] standard by New York

courts").  Even Plaintiff has alleged that the Article had worldwide interest.  Compl. ¶ 22.[31]

 *Second*, Plaintiff failed to meet his burden of pleading facts that would establish the

requisite "actual malice."  Other than a conclusory statement that Defendants acted with actual

malice, the Complaint's only allegations related to their pre-publication knowledge are the

assertion that Plaintiff told Defendants the Article was a "fake story," *id.* ¶ 17, speculation that

Defendants must have gotten information from "completely unreliable sources," *id.* ¶ 19, and the

vague assertion that Defendants did not contact other, unspecified witnesses who would have

bolstered Plaintiff's denial, *id.* ¶ 16.  None of these allegations meet his pleading burden.

 Courts consistently have held that the mere failure to adequately investigate is not

sufficient to establish actual malice.[32]  And although Plaintiff accuses Defendants of using a

---

[31] Application of Minnesota law would lead to the same result.  *Maethner*, 929 N.W.2d at 875 (requiring showing of actual malice so as not to "chill[] speech on matters of public concern, which 'occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.'") (citation omitted).  Publication in the news media weighs in favor of a finding that the statements involve a matter of public concern.  *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 881 (Minn. 2019) ("[c]ourts may consider dissemination of the statements in the news media as one of many relevant factors in determining whether the statements involve a matter of public concern.").  As in New York, actual malice is a question of law in Minnesota.  *Maethner*, 929 N.W. 2d at 879 n.7; *Diesen v. Hessburg*, 455 N.W.2d 446, 453-54 (Minn. 1990).  *See also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("[e]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.") (citation omitted).

[32] *See BYD Co. v. VICE Media LLC*, 2021 WL 1225918, at *10 (S.D.N.Y. Mar. 31, 2021) (dismissing complaint for failure to plead actual malice; rejecting "theory [that] would impose on [defendant] a duty to investigate even in circumstances where [defendant] had no subjective reason to doubt the veracity of its sources); *Sackler v. ABC, Inc.*,

"fictitious source," *id*. ¶ 13, relying on anonymous sources does not demonstrate actual malice. *Cabello-Rondóon v. Dow Jones & Co.*, 720 F. App'x 87, 89 (2d Cir. 2018) ("reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice."). As the Second Circuit has held, "actual malice must be supported by clear and convincing proof," but Plaintiff has not alleged any **facts**, let alone any that plausibly suggest clear and convincing proof that would support a finding of actual malice. *Celle*, 209 F.3d at 183; *cf. Liberman*, 80 N.Y.2d at 438 ("there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action."). Accordingly, under either State's law, as well as under federal constitutional standards, Plaintiff failed to meet his burden of pleading actual malice. His lawsuit must be dismissed for this additional reason.

## VI.    COURTS SHOULD DISPOSE OF CLAIMS ARISING OUT THE EXERCISE OF FREE SPEECH RIGHTS AT THE PLEADING STAGE

As the United States Supreme Court has recognized, "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965); *see also Sullivan*, 376 U.S. at 279 ("[w]ould-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so."). Accordingly, courts across the nation have recognized the importance of speedy resolution of

---

2021 WL 969809, at *4 (Sup. Ct. N.Y. Cty. Mar. 9, 2021) (applying amended SLAPP statute; "it is well settled that a 'failure to investigate will not alone support a finding of actual malice'") (quoting *Harte-Hanks Comm'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989)); *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 355 (2009) (publisher's alleged "failure to employ fact-checkers, to attempt to verify the status of [plaintiff's] license prior to publication, or to identify those individuals responsible for the false headline and statement" insufficient to establish actual malice).

cases involving free speech to prevent this chilling effect.[33]

Consistent with these federal authorities, New York courts also are encouraged to dispose of libel cases at the pleading stage where, as here, the threshold issues can be resolved as a matter of law.  As the New York Court of Appeals has explained, there is "particular value" in resolving defamation claims at the pleading stage, "so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 379 (1995).[34]  Minnesota courts also dismiss cases early where a defamation claim is barred as a matter of law.  *See, e.g.*, *Smith v. Britton*, 2014 WL 349742, at *5 (Minn. Ct. App. Feb. 3, 2014).

This approach is consistent with recent changes to New York's SLAPP law, codified at N.Y. Civil Rights Law §§ 70-a and 76-a.  In November 2020, the state legislature broadened the law's application to include cases, like this one, which involve "any communication in a … public forum in connection with an issue of public interest," or any conduct in furtherance of "the constitutional right of free speech in connection with an issue of public interest."  N.Y. Civ. Rights Law § 76-a(1)(a).  The law requires that "public interest" be "construed broadly" to "mean any subject other than a purely private matter."  *Id*. § 76-a(1)(d).  Courts should grant early dismissal where the plaintiff has not plausibly alleged each element of his defamation claim

---

[33] *E.g.*, *Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992) ("speedy resolution" is needed at the "earliest possible stage" of cases involving First Amendment rights); *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) (recognizing danger that publishers will "become self-censors" out of fear "of being put to the defense of a lawsuit" regardless of "the outcome of the lawsuit itself"); *Meeropol v. Nizer*, 381 F. Supp. 29, 32 (S.D.N.Y. 1974) (summary relief "is particularly appropriate at an early stage in cases where claims of libel … are made against publications dealing with matters of public interest and concern"), *aff'd*, 560 F.2d 1061 (2d Cir. 1977).

[34] "To unnecessarily delay the disposition of a libel action is not only to countenance waste and inefficiency but to enhance the value of such actions as instruments of harassment and coercion inimical to the exercise of First Amendment rights."  *Immuno, A.G. v. Moor-Jankowski*, 145 A.D.2d 114, 128 (1st Dep't), *aff'd*, 74 N.Y.2d 548 (1989), *vacated*, 497 U.S. 1021 (1990), *aff'd*, 77 N.Y.2d 235 (1991), *cert. denied*, 500 U.S. 954 (1991); *see also Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545, 548-49 (1980) (early adjudication of libel claims should be encouraged to protect the "free flow of information" and avoid the chilling effect of unwarranted claims on speech).

– including allegations sufficient to establish actual malice.  *See, e.g., Sackler*, 2021 WL 969809, at *5 (applying amended SLAPP statute and granting motion to dismiss defamation claim).

These amendments also create a substantive right for prevailing defendants to recover attorneys' fees and other damages from plaintiffs where the lawsuit was "commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law."  N.Y. Civ. Rights Law § 70-a(1)(a).  Defendants are entitled to fee recovery unless Plaintiff can "establish by clear and convincing evidence a 'substantial basis' in fact and law for [his] claim."  *Duane Reade, Inc. v. Clark*, 2 Misc. 3d 1007(A), at *5 (Sup. Ct. N.Y. Cty. 2004).[35]  Courts evaluating the impact of the amended statute thus far have consistently found that it applies in federal court.  *See Palin*, 2020 WL 7711593(JSR), at *5; *Coleman v. Grand*, 2021 WL 768167, at *7 (E.D.N.Y. Feb. 26, 2021), *appeal filed*, No. 21-800 (2d Cir. Mar. 26, 2021).

## CONCLUSION

Because Plaintiff has failed to plead a cause of action for defamation, for all the reasons set forth in this Motion, dismissal is required under controlling federal and state law.  This Court also should find that Defendants are entitled to recover their attorneys' fees incurred in defending against this meritless action, under New York's amended SLAPP statute.

Dated:  April 12, 2021                          Respectfully submitted,

                                                DAVIS WRIGHT TREMAINE LLP

                                                By: */s/ Kelli L. Sager*
                                                    Kelli L. Sager (admitted *pro hac* vice)
                                                    Selina MacLaren (admitted *pro hac* vice)

---

[35] The amendments also permit defendants subject to SLAPP suits to obtain compensatory damages and punitive damages if the suit was brought for the purpose of "harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights."  N.Y. Civ. Rights Law § 70-a(1)(b)-(c). Defendants reserve their rights to assert these claims for recovery.

865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
(213) 633-6800
(213) 633-6899
kellisager@dwt.com
selinamaclaren@dwt.com

Jeremy Chase
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
jeremychase@dwt.com

*Attorneys for Mail Media, Inc. and Laura Collins*