UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL LINDELL,<br><br>                Plaintiff,<br><br>      v.<br><br>MAIL MEDIA INC. d/b/a MAIL ONLINE and LAURA COLLINS,<br><br>                Defendants. | Case No. 1:21-cv-00667-PAC<br><br>**[REDLINED] [PROPOSED] AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

*For the convenience of the Court and the parties, Plaintiff hereby files this redline with the proposed changes to his Complaint.*

Plaintiff Michael Lindell ("Mr. Lindell"), by and through his undersigned attorneys, hereby complains against defendants Mail Media Inc. d/b/a Mail Online and Laura Collins (collectively, "Defendants") as follows:

## SUMMARY OF THE CASE

1.  Mr. Lindell seeks redress in this libel action for harm inflicted on him as the result of a thoroughly deceitful, dishonest and defamatory media article written and published by Defendants, which falsely charges him with seducing and carrying on a torrid love affair with actress and singer Jane Krakowski — a woman whom he has never even met.

2.  In their bogus "news" report, Defendants accuse Mr. Lindell, a reverent family man prominent in his church community, of plying Ms. Krakowski with liquor, wine and other such gifts. As a recovering addict and alcoholic who frequently writes and speaks publicly about his spiritual triumphs over substance abuse, Mr. Lindell is horrified by the Defendants' fabricated and very public accusations.

3. Defendants asked for a comment shortly prior to publication, and Mr. Lindell responded that the entire story is fake, explaining to them that he had never even *heard* of Jane Krakowski. Ms. Krakowski apparently likewise informed Defendants before publication that she did not know Mr. Lindell, and had never met him.

4. Notwithstanding the lack of any reliable factual support for Defendants' allegations, the statements by both subjects that they did not even know the other person and that the story was false, and Defendants' ability to interview other witnesses who similarly would have refuted the claims, Defendants made the conscious decision to publish their defamatory statements anyway. At the time of publication, Defendants were either aware that their statements about Mr. Lindell were false, or Defendants harbored serious doubts about the truth of the claims. Defendants' publication of the defamatory claims reached numerous readers of Mail Online, and also foreseeably caused a chain reaction of republication of the claims in other news outlets, websites and social media, which reached many more readers throughout the world.

5. Defendants' false and defamatory statements about Mr. Lindell have caused tremendous harm to his personal and professional reputation and prospective economic opportunities, as well as causing him significant humiliation and emotional distress. In particular (and without limitation), Mr. Lindell founded the Lindell Recovery Network, a platform that helps those struggling with addiction connect with recovery organizations. Defendants' fabricated story that he showered Ms. Krakowski with gifts of "champagne and bottles of different liquor" severely undermines Mr. Lindell's hard-earned credibility, integrity and character in the field of addiction recovery as well as in religious communities. Mr. Lindell's ability to succeed in this important effort have been severely impacted by Defendants' wrongful actions.

**PARTIES**

6. Plaintiff Michael Lindell is an individual domiciled in the State of Minnesota.

7. On information and belief, defendant Mail Media Inc. ("Mail Online") is a Delaware corporation doing business as Mail Online, with its principal place of business in New York, New York. On information and belief, Mail Online manages, operates and/or publishes www.dailymail.com (the "Website"), a tabloid news publication with hundreds of New York-based employees. The Website claims to attract 75 million unique monthly visitors from the United States. Mail Online represents to the public that, combined with its sister organization in the UK offering the same or similar content, it is "the world's most visited English language newspaper website."

8. On information and belief, defendant Laura Collins ("Collins") is an individual residing and domiciled in or around New York City, New York, and is the Chief Investigative Reporter for the Website.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and an amount in controversy over $75,000, and personal jurisdiction because Defendants reside in the state of New York.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because Defendants are located in this district and because the article upon which this defamation action is based was edited and published in this district.

## FACTUAL ALLEGATIONS

11. On or about January 21, 2021, Mail Online published an article authored by Collins titled *EXCLUSIVE: Trump-loving MyPillow CEO Mike Lindell had secret romance with 30 Rock actress Jane Krakowski and wooed her with flowers and champagne in relationship that BAFFLED her friends* (the "Article") on the Website. The Article was completely fabricated,

and both Mr. Lindell and Ms. Krakowski had never even met each other. Moreover, when Defendants reached out to both persons for a comment to their Article, each of them independently told Defendants prior to publication that the story was false and they did not know the other person.

12. Defendants falsely claim in the Article (among things) that, during the summer of 2020, Mr. Lindell "was shown the door" by a New York entertainer named Jane Krakowski, who allegedly "let [him] go" after the two had taken part in "a secret nine month romance."

13. Defendants further reported in their Article that Mr. Lindell "wooed the actress for close to a year, showering her with gifts and flowers." According to Defendants' fictitious source for the Article: "He sent flowers to her almost every week and champagne and bottles of different liquor." But then "[t]hey would fight and Jane would throw all of the gifts that he had given her away." Defendants state in their Article that Ms. Krakowski may have ended the "passionate romance" with Mr. Lindell because "she didn't like the way he treated women."

14. The above statements of fact in the Article are utterly false. The true facts, which Defendants knew at all relevant times, are that:

(a) Mr. Lindell, who has a history with substance abuse, has been proudly, publicly clean and sober for over a decade—which Defendants acknowledge in the Article. He founded Lindell Recovery Network, a platform that helps those struggling with addiction connect with Christian recovery organizations. As a recovering alcoholic, Mr. Lindell would never purchase liquor or champagne, or foist alcohol on others, and Defendants' statement that he did so is highly injurious and insulting to him.

(b) Mr. Lindell (who lives in Minnesota) and Ms. Krakowski (who lives in New York) do not know one another. They have never even met, let alone ever carried

on any sort of interpersonal relationship—whether romantic or otherwise.

(c) As an evangelical Christian, Mr. Lindell is piously devoted to his religious faith, his family, civic involvement and charity. He is not at all a secretive or sordid person, as Defendants portray him in the Article. Mr. Lindell likewise does not engage in any sort of scandalous, clandestine affairs of the kind described in the Article.

15. Defendants knew their statements in the Article were false, or at the very least entertained conscious doubts that the defamatory statements in the Article were true, but still published them anyway.

16. The Article contains no indication that Defendants ever attempted to contact numerous other witnesses who would have been in a position to confirm or deny the claims in the Article.

17. Mr. Lindell himself told Defendants prior to publication that the Article is a "fake story." In response to an email message from Collins, he wrote on January 19, 2021: "I have never even heard of Jane Krakowski." But Defendants buried this quote as an afterthought in the *very last* sentence of their lengthy Article, which is nearly 1,000 words long.

18. Defendants also admit in the second to last sentence of the Article that Ms. Krakowski likewise denied even knowing Mr. Lindell, telling them: "I've never met the man."

19. On information and belief, Defendants nonetheless deliberately ran their Article knowing that the claims therein were defamatory and knowing that they were likely false and based on completely unreliable sources, if any sources at all. Defendants published the Article with reckless disregard of the truth.

20. The aforementioned conduct was consistent with Mail Online's general practices and procedures, which have led the editors of Wikipedia.org to prohibit use of the Website or its

sister publication in the UK, *Daily Mail*, as sources on the English-language edition of the free online encyclopedia: "There is consensus that the *Daily Mail* (including its online version, MailOnline) is generally unreliable, and its use as a reference is generally prohibited, especially when other more reliable sources exist. As a result, the *Daily Mail* should not be used for determining notability, nor should it be used as a source in articles."

21. Defendants knew and intended that their defamatory statements about Mr. Lindell would be viewed by many people, and also would be republished by other news outlets and websites, both because of the salacious claims made in the Article, and also because such republication is a part of Defendants' conscious business strategy.

22. That is precisely what happened: Defendants' defamatory statements about Mr. Lindell were republished by other news outlets, which resulted in many more people throughout the world reading the aforementioned defamatory statements about him.

23. The aforementioned defamatory statements about Mr. Lindell continue to be repeated and republished by others, and likely will continue to be repeated and republished for the duration of Mr. Lindell's lifetime and beyond.

24. The Lindell Recovery Network is a nonprofit founded in approximately 2019.

25. The network provides services for various forms of addiction, mostly substance and behavioral addiction, along with co-morbidities such as anxiety and addiction.

26. Mr. Lindell's name is attached to the network and his personal story as a Christian who came back from his addiction to become a success is emphasized.

27. The network is faith-based and mostly appeals to evangelical Christians who are likely to be familiar with Mr. Lindell's redemption narrative.

28. The network has an online platform where people can watch videos and testimonials.

29.     The network also intends to affiliate with churches and religious treatment centers where users can get in-person treatment.

30.     The network has only been able to associate with a handful of churches, and a Christian broadcaster, has informed the network that churches may be pulling out because of Defendants' allegations about Mr. Lindell.

24.31.  Defendants knew and intended, at the time they published the Article, that their defamatory statements about Mr. Lindell were likely to be repeated and republished by many others for years into the future, by people throughout the United States and the world. Notwithstanding this awareness by Defendants, as well as their awareness that the statements had no basis in fact, Defendants still published the Article.

### FIRST CAUSE OF ACTION

**(Defamation Against All Defendants)**

25.32.  Mr. Lindell re-alleges and incorporates by this reference the allegations in Paragraphs 1 through 2431 of this Complaint as though fully set forth herein.

26.33.  The statements by Defendants set forth hereinabove were false.

27.34.  The false statements were of and concerning Mr. Lindell.

28.35.  Defendants made the false statements about Mr. Lindell either knowing that the statements were false or with reckless disregard for the truth.

29.     The false statements are not protected by any privilege or authorization.

30.     Mr. Lindell has been seriously damaged as a direct and proximate result of Defendants' publication of the false statements, the full amount of which will be proven at trial. Further, the false statements constitute defamation *per se* because they tend to injure Mr. Lindell in his trade, business or profession.

31.     Defendants' conduct was willful, malicious and oppressive, in that Defendants

knew full well that the false statements would harm Mr. Lindell. As such, in addition to compensatory damages and/or presumed damages, Mr. Lindell demands punitive damages relating to Defendants' publication and maintenance of the above-referenced false statements, in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Mr. Lindell demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Lindell respectfully requests:

(a) An award of damages to Mr. Lindell in an amount to be determined at trial but believed to be in excess of $75,000;

(b) An award of punitive damages to Mr. Lindell in an amount to be determined at trial;

(c) An order granting permanent injunctive relief enjoining Defendants from continuing to publish or republish the statements adjudicated to be defamatory; and

(d) An award of such other and further relief as the Court may deem just and proper.

Dated: ~~January 25~~April 26, 2021                Respectfully submitted,

                                                                   By: /s/ Charles J. Harder
                                                                     Charles J. Harder, Esq.
                                                                     HARDER LLP
                                                                     100 Park Avenue, Sixteenth Floor
                                                                     New York, New York 10017
                                                                     (212) 799-1400

*Counsel for Plaintiff
Michael Lindell*