UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
---------------------------------------------------------------------- x
MICHAEL LINDELL,
                         Plaintiff,

              - against -

MAIL MEDIA INC. d/b/a MAIL ONLINE and
LAURA COLLINS,

                         Defendants.
---------------------------------------------------------------------- x

Case No. 1:21-cv-00667

**ORAL ARGUMENT REQUESTED**

# REPLY MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANTS MAIL MEDIA, INC. AND LAURA COLLINS TO DISMISS THE COMPLAINT

Kelli L. Sager (admitted *pro hac vice)*
Selina MacLaren (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:  (213) 633-6800
Fax:  (213) 633-6899
kellisager@dwt.com
selinamaclaren@dwt.com

Jeremy A. Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
Fax:  (212) 489-8340
jeremychase@dwt.com

*Attorneys for Mail Media, Inc. and Laura Collins*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii
PRELIMINARY STATEMENT ............................................................................................... 1
   I.   PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW. .................. 1
      A.   The Statements At Issue Are Not Susceptible To Defamatory Meaning. ...................... 1
      B.   Plaintiff Failed To Allege Defamation *Per Se* or Special Damages. ............................. 5
      C.   The Incremental Harm Doctrine Bars Plaintiff's Claim. ............................................... 7
      D.   Plaintiff Failed to Plead Plausible Allegations of Actual Malice. ................................. 8
   II.   THE NEW YORK SLAPP STATUTE APPLIES ........................................................... 10
CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014) ................................................................................................10

*Biro v. Condé Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012) ................................................................................3, 8

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) ................................................................................................7, 8

*Coliniatis v. Dimas*,
    965 F. Supp. 511 (S.D.N.Y. 1997) .........................................................................................9

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir. 1993) .....................................................................................................10

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
    556 F.2d 113 (2d Cir. 1977) ...................................................................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ....................................................................................................8, 9, 10

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) .......................................................................................................7

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998) ......................................................................................8

*Joyce v. Thompson Wigdor & Gilly LLP*,
    2008 WL 2329227 (S.D.N.Y. June 3, 2008) ..........................................................................7

*Kalimantano GMBH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013) ....................................................................................6

*Karedes v. Ackerley Grp., Inc.*,
    423 F.3d 107 (2d Cir. 2005) ...................................................................................................3

*Kelly v. Schmidberger*,
    806 F.2d 44 (2d Cir. 1986) .....................................................................................................3

*Kesner v. Dow Jones & Co.*, – F. Supp. 3d –, 2021 WL 256949, at *11 (S.D.N.Y.
    Jan. 26, 2021) .........................................................................................................................3

4833-9828-5799v.9 0049264-000095

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020).................................................................................................10

*Rizzo v. Edison, Inc.*,
  172 F. App'x 391 (2d Cir. 2006) ..........................................................................................5

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
  464 F. Supp. 2d 206 (S.D.N.Y. 2006).................................................................................10

*Southard v. Forbes, Inc.*,
  588 F.2d 140 (5th Cir. 1979) ................................................................................................2

*Sweigert v. Goodman*,
  2021 WL 1578097 (S.D.N.Y. Apr. 22, 2021)......................................................................10

*Tah v. Glob. Witness Publ'g, Inc.*,
  991 F.3d 231 (D.C. Cir. 2021) ..............................................................................................9

*US Dominion, Inc., et al. v. My Pillow, Inc. and Michael J. Lindell*,
  Case No. 1:21-cv-00445-CJN (D.D.C. filed Apr. 19, 2021) ................................................7

*Vinas v. Chubb Corp.*,
  499 F. Supp. 2d 427 (S.D.N.Y. 2007)...............................................................................3, 4

**State Cases**

*Gorman v. Swaggert*,
  524 So. 2d 915 (La. Ct. App. 1988)......................................................................................3

*Oleniak v. Slaton*,
  2014 WL 2151944 (Sup. Ct. N.Y. Cty. May 21, 2014)........................................................4

*Rappaport v. VV Publ'g Corp.*,
  163 Misc. 2d 1 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 223 A.D.2d 515 (1st Dep't
  1996) ............................................................................................................................2, 3, 4

*Rejent v. Liberation Publs., Inc.*,
  197 A.D.2d 240 (1st Dep't 1994) .........................................................................................4

*Stepanov v. Dow Jones & Co.*,
  120 A.D.3d 28 (1st Dep't 2014) ...........................................................................................3

*Wilder v. Cody Country Chamber of Commerce*,
  868 P.2d 211 (Wyo. 1994)....................................................................................................6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................10

**Other Authorities**

https://en.wikipedia.org/wiki/Wikipedia:About ............................................................................9

**PRELIMINARY STATEMENT**

Plaintiff's Opposition brief ("Opp.") does not rebut any of the four independent grounds for dismissal in Defendants' Motion.  Instead, he resorts to mischaracterizations of the law and the Article at issue, and effectively concedes that his Complaint fails to state a claim by seeking (directly and indirectly) to amend it.  That is because well-established law makes clear that even a "devout Christian" (Opp. at 1) would not be subjected to hatred or contempt by ordinary readers, applying today's societal mores, because of a report that he dated a popular actress and gave her gifts that included alcohol.  Mem. at 9-15.  So Plaintiff has attempted to rewrite his claim, asserting for the first time that the three statements identified in his Complaint "accuse[ him] of being a hypocrite."  Opp. at 1.  But he did not plead defamation-by-implication, or any facts that would support this newly-minted "hypocrisy" theory (let alone any that plausibly suggest this implication was **intended**) – nor can he do so.  Nothing in the Article states or can reasonably be read as implying that Plaintiff is a "hypocrite."

Plaintiff's other strained efforts to salvage his claim – asserting an incipient charitable venture is akin to a "profession"; urging this Court to ignore that no conceivable harm could result from the statements at issue, given the uncontroverted statements and widespread negative publicity about him; and his flimsy assertion that a subject's "denial" is enough for actual malice – fail to overcome the defenses in the Motion.  His lawsuit must be dismissed with prejudice.[1]

**I.     PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW.**

   **A.     The Statements At Issue Are Not Susceptible To Defamatory Meaning.**

Plaintiff has not cited *a single case* where a court has found the type of innocuous statements at issue here, about a consensual romantic relationship between two adults, was

---

[1] As discussed in Defendants' concurrently-submitted Letter addressing Plaintiff's proposed "Amended" Complaint, none of these inherent defects are solved by the proposed amendments, nor can he cure them by amendment.

capable of a defamatory meaning. Nor can Plaintiff identify *any* case where it was found to be defamatory to state that an adult (whether he is a recovered addict, pious, or conservative) gave another adult a gift of alcohol – an entirely legal, and commonplace event. Faced with the overwhelming weight of controlling case law making clear that none of the three statements at issue are defamatory (Mem. at 9-18), Plaintiff effectively abandons his original claims.

Instead, Plaintiff takes the *new* position that statements describing a consensual romantic relationship *imply* that he is a "hypocrite," based on the apparent theory that dating or gifting champagne is somehow inconsistent with "Christian" or "conservative" values. Opp. at 9. This revisionist argument, unsupported by authority, cannot save his meritless defamation claim.

*First*, the Article says the *opposite* of what Plaintiff claims it implies. Instead of saying Plaintiff "boozes" (Opp. at 9), the Article states that Plaintiff "achieved sobriety through prayer" and "turned his life around, from his recovery from crack cocaine and alcohol addiction to now being sober and worth hundreds of millions of dollars." ECF No. 24 (MacLaren Decl.), Ex. A.[2] Rather than accusing Plaintiff of "cavort[ing]" with "a Hollywood actress" (Opp. at 9), or suggesting any immoral or disreputable behavior, the Article describes a long-term relationship, stating that Plaintiff "wooed the actress for close to a year." MacLaren Decl., Ex. A. Nothing in the Article states or can reasonably be read to imply that he drank alcohol, engaged in sexual misconduct, or otherwise acted inconsistently with his professed evangelical Christian faith.

*Second*, even if Plaintiff had pleaded this purported implication (which he did not), there are "significant obstacles" to such claims that he cannot overcome. *Rappaport v. VV Publ'g Corp.*, 163 Misc. 2d 1, 5 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 223 A.D.2d 515 (1st Dep't 1996).

---

[2] In addition to its other defects, a defamatory implication cannot arise where, as here, the precise language contradicts it. E.g., Southard v. Forbes, Inc., 588 F.2d 140, 144 (5th Cir. 1979) (rejecting defamation claim, where "the innuendo [plaintiffs] claim to impart to the Forbes article [is] a meaning which the article itself denies").

"On a motion to dismiss, New York law holds claims of defamation by implication to a heightened standard." *Kesner v. Dow Jones & Co.*, – F. Supp. 3d –, 2021 WL 256949, at *11 (S.D.N.Y. Jan. 26, 2021).[3] Under this standard, the implication "must be present in the **plain and natural meaning** of the words used." *Rappaport*, 163 Misc. 2d at 5 (quoting *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092–93 (4th Cir. 1993)) (emphasis added). That is hardly the case here. The Complaint does not even mention the word "hypocrite," let alone explain how dating an actress or giving her gifts would make Plaintiff one, since neither act is barred by Christian faith or conservative doctrine, or inconsistent with assisting recovering drug addicts.[4]

None of the few cases Plaintiff cited support his claim. He primarily relies on a Louisiana case in which a pastor and his religious corporation sued over statements accusing him of adulterous sexual affairs, embezzling church funds, and connections to the Mafia. *Gorman v. Swaggert*, 524 So. 2d 915, 917–18 (La. Ct. App. 1988). This out-of-state case is easily distinguishable: unlike embezzlement, it is not a **crime** to date an actress or gift alcohol to an adult, nor is either one comparable to accusing a clergyman of "many years" of "adultery, illicit affairs, and unscriptural lascivious conduct with women who came to him for counseling." *Id*. at 918.[5] *Gorman* illustrates the very high bar to finding that statements harm a clergyman's

---

[3] See also Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 37 (1st Dep't 2014) (plaintiff bringing defamation-by-implication claim must make a "rigorous showing" to survive dismissal); Biro v. Condé Nast, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) (dismissing defamation by implication claim, noting "where a plaintiff fails to identify any misleading omissions or factual suggestions, dismissal is appropriate") (quoting Krepps v. Reiner, 588 F. Supp. 2d 471, 483–84 (S.D.N.Y. 2008), aff'd, 377 F. App'x 65 (2d Cir. 2010)).

[4] As one of Plaintiff's cases holds, when several "levels of attenuation" are required to find a "purported implication," it may well not be a reasonable inference. Vinas v. Chubb Corp., 499 F. Supp. 2d 427, 436 (S.D.N.Y. 2007) (rejecting implication claim where plaintiff accountant "alleges that [defendant] said [plaintiff] was 'no good,'" which plaintiff claimed meant that he was "too close" to his client, which implied that he was "cooking the books"). Here, even if Plaintiff had pleaded a defamatory implication, it is too attenuated be sustainable.

[5] Plaintiff haphazardly quotes a few other cases, none of which support him. Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986), and Karedes v. Ackerley Grp., Inc., 423 F.3d 107 (2d Cir. 2005), involved accusations of fraudulent and criminal conduct, so are inapposite. His other cases support Defendants, confirming that defamatory meaning must be found in a "common-sense construction" of the words. Opp. at 7 (quoting Kelly, 806 F.2d at 46); see also Opp. At 8

reputation – a hurdle that would be much higher for Plaintiff, who must demonstrate that the statements here would subject him to "hatred" or "contempt" by ordinary readers.  Mem. at 11.

Plaintiff's attempt to rely on *Rejent v. Liberation Publs., Inc*., 197 A.D.2d 240 (1st Dep't 1994), is equally misplaced.  In *Rejent*, the defendants published the plaintiff's photograph in an advertisement for an erotic photograph collection called "Lust," depicting him "bare from the waist up … holding his crotch area with both hands," *id.* at 242, "surrounded by innumerable other suggestive advertisements of live sex videos, telephone sex talk, erotic devices and sexual literature" and photos of "naked men with unzipped pants grasping their genitals." *Id.* at 243-44.  The court found the depiction could imply the plaintiff was "sexually lustful, promiscuous and immoral."  *Id.*  The statements here, and the context in which they appear, are not at all similar.[6]

***Third***, as Plaintiff concedes, a defamation-by-implication claim independently requires that the "Defendants affirmatively **intended** such implication."  *Vinas*, 499 F. Supp. 2d at 437 (emphasis added); Opp. at 9.  That purported intent must be clear from the language of the allegedly defamatory statement.  *E.g.*, *Rappaport*, 163 Misc. 2d at 5 (language "'must … affirmatively suggest that the author intends or endorses the inference.'") (citation omitted).  Here, nothing in the Article plausibly gives rise to an allegation that Defendants intended to imply that Plaintiff is a "hypocrite" – it does not say or imply any such thing.

Plaintiff is correct, however, that the Court must initially assess whether there is

---

("words [must be] taken as they are commonly understood.") (quoting Cianci v. New Times Publ'g Co., 639 F.2d 54, 60 (2d Cir. 1980)).  A common-sense construction of the statements here makes clear they are not defamatory.

[6] Plaintiff's strained attempt to distinguish the other cases cited by Defendants falls short.  For example, Plaintiff falsely asserts that Oleniak v. Slaton, 2014 WL 2151944 (Sup. Ct. N.Y. Cty. May 21, 2014), concerned "vague statements" (Opp. at 11); Oleniak involved fifteen specific quotes, enumerated in the decision, including that plaintiff had three children out of wedlock, was "a player" with a "string of [] conquests," and kept an "old shoe box" full of pictures "of various women."  Id.  These statements are hardly vague, and are far more likely to harm reputation than the statements at issue here.  Plaintiff also inaccurately asserts that Defendants do not cite "any case law holding that allegations of alcohol use are not defamatory," Opp. at 12, but they did precisely that.  See Mem. at 15 n.24 (collecting cases).  In any event, the Article does not say or imply Plaintiff drank alcohol.  Mem. at 13-15.

4

defamatory meaning. Opp. at 7; *see also* Mem. at 9 n.16. The parties also agree that in this analysis, "defamatory meaning is contextual." Opp. at 11; *see also* Mem. at 10-11. But this "context" is evaluated by how **ordinary** people would view the statements, given contemporary mores (Mem. at 9-15); Plaintiff's **subjective** interpretation is irrelevant.[7] There is no special rule that gives less protection to speech about "social conservative[s]" (Opp. at 12), or that permits a "pious Christian" to distort the meaning of plain language. Mem. at 13-14.[8]

### B.  Plaintiff Failed To Allege Defamation *Per Se* or Special Damages.

Plaintiff does not even attempt to claim that the statements at issue harmed him in his profession as CEO of MyPillow; instead, he asserts that he was injured in his role as "the spokesperson for the Lindell Recovery Network." Opp. at 15. But the Complaint does not allege – and cannot plausibly allege – that LRN is his "trade" or "profession"; it says only that he "founded" a "platform" that helps struggling addicts "connect with Christian recovery organizations." Cmplt. ¶ 14(a). No facts are alleged about his current involvement, or that establish it as an ongoing entity that engages in business, generates revenue, or has any current (or even former clients).[9] **No** case is cited by Plaintiff that supports such an expansive view of this *per*

---

[7] Plaintiff grossly miscites the Second Circuit's decision in Rizzo v. Edison, Inc., 172 F. App'x 391 (2d Cir. 2006), deliberately omitting the word "only" from the quotation cited in his Brief. Opp. at 8. It reads, in full, that "a jury question is raised only if the words can be read literally in a way that may be untrue." 172 F. App'x at 395–96 (emphasis added). Plaintiff also ignores the Court's actual holding, which did not involve defamatory meaning at all (the statement at issue involved a bomb threat, and the issue being discussed was substantial truth, not defamatory meaning).

[8] Plaintiff does not allege – nor could he plausibly allege – that evangelical Christians may never give alcohol as a gift, or have romantic relationships. If he attempted to espouse such a distorted view of religion, his lawsuit would have to be dismissed, because the Court may not "examine and weigh competing views of church doctrine" to determine if a statement is defamatory. See Mem. at 14 n.23 (citation omitted). Plaintiff's only response – that his claim of injury is because he "promotes a Biblical approach to treating substance abuse" (Opp. at 13) – is a non sequitur. To evaluate this supposed "Biblical approach," the Court would have to find that it forbids romantic relationships and gifting alcohol. But the Establishment Clause does not permit a court to delve into defamation claims that "raise inherently religious issues" or that would require the court to "delve into religious doctrine," where "neutral principles cannot be applied to resolve" the defamation claim. Mem. at 14 n.23 (citation omitted).

[9] As set forth in Defendants' May 6 Letter, Plaintiff's proposed "amendments" do not cure this defect. A vague allegation that a plaintiff is associated with a charity does not make it his "trade" or "profession" – otherwise, all

5

*se* defamation category.

Moreover, even if Plaintiff's vague association with LRN was a "profession" (which it plainly is not), and even if the Article implied that he is a "hypocrite" (which it did not), Plaintiff failed to show that this implication impugned his ability to act as an anti-addiction spokesperson. Personal characteristics like honesty, integrity, and sobriety may be relevant to a number of vocations (or, as here, an avocation), but to rise to the level of defamation *per se*, the statements must **directly** implicate the ability to "***perform***" that trade.  *See* Mem. at 16 (quoting *Oakley v. Dolan*, 833 F. App'x 896, 900 (2d Cir. 2020)); *Kalimantano GMBH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 420 (S.D.N.Y. 2013) (accusing plaintiffs of stealing a watch did not reflect on their ability to run a foodstuffs business; "[c]ourts have consistently held that any allegedly defamatory statements that do not affect a plaintiffs actual business profession, rather than simply qualities that are important for business, are not defamatory per se.").[10]  Nothing in the Article states (or implies) that Plaintiff cannot promote – or even run – a substance abuse charity.

Plaintiff largely ignores the Second Circuit's decision in *Oakley*.  There, a "former professional athlete" alleged that he was paid for public appearances, and that the allegedly defamatory statements about his alcohol problem caused an addiction clinic to cancel his paid appearance.  833 F. App'x at 900.  Plaintiff does not even allege that he receives income from LRN, or identify any specific interference with his support of LRN.[11]  No case supports his attempt to shoehorn his charitable endeavor into a narrow *per se* defamation category.

---

manner of charities, non-profits, or social clubs would be included, and the "business or trade" category would be expanded to effectively read its limitations out of existence.

[10] *Accord Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo. 1994) (not defamatory per se to call former director of a nonprofit "sneaky," "lazy," "good-for-nothing," and a "son-of-a-bitch").

[11] His only comment about this decision – that Oakley did not allege that the paid public appearances were his "trade" (Opp. at 15) – ignores that Oakley had a much stronger basis for making such an allegation than Plaintiff does here, yet Oakley's claim was rejected.  *See also* Mem. at 16-17.

6

As a result, Plaintiff was required to specifically plead facts demonstrating that he suffered special damages from the statements at issue, *i.e.*, "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]" *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (citation and internal quotation marks omitted). A conclusory allegation that a plaintiff suffered lost business opportunities, does not satisfy this requirement. *Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227, at *12 n.3 (S.D.N.Y. June 3, 2008); *see also* Mem. at 21-22. The single, conclusory sentence offered by Plaintiff (Opp. at 14) does not identify **any** pecuniary loss, let alone connect any specific pecuniary loss to the alleged defamation at issue.

### C.   The Incremental Harm Doctrine Bars Plaintiff's Claim.

It is hardly surprising that Plaintiff wants this Court to ignore his "public reputation, how the public feels about his public statements," and how his comments about "public issues … have impacted his reputation." Opp. at 16. As the materials submitted with the Motion make clear – and Plaintiff **does not dispute** – he has been the subject of widespread, negative publicity that includes his advocacy of fake COVID-19 "cures," false theories about election fraud, and support of martial law. Mem. at 6 n.12 (summarizing authorities); MacLaren Decl., Ex. B.[12]

He also does not and cannot dispute that **the Article itself** addresses these topics, and is incorporated into the Complaint by reference. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); Mem. at 19. Accordingly, this Court may consider Plaintiff's

---

[12] Plaintiff's cursory "objection" to the Court considering materials that may be judicially noticed is directly contrary to his position in a defamation lawsuit where he is a **defendant**. *See* Suppl. Decl. of Selina MacLaren, ¶ 2 and Ex. F (brief in *US Dominion, Inc., et al. v. My Pillow, Inc. and Michael J. Lindell*, Case No. 1:21-cv-00445-CJN (D.D.C. filed Apr. 19, 2021) (ECF No. 30-1), at 33-34. As Plaintiff argued to another federal judge just last month, it **is** proper for a court to take judicial notice of documents incorporated by reference into a complaint, "matters of common knowledge," and the content of news articles. *Id.*

reputation as described in the "unchallenged or non-actionable parts of" the Article, to evaluate whether the innocuous statements at issue could plausibly cause "appreciable additional harm" to Plaintiff's reputation. Mem. at 18 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 176 (2d Cir. 2001)). This analysis can be done on a motion to dismiss,[13] and where the claim of damage is simply not credible, the lawsuit should be dismissed. Mem. at 19-20.

Plaintiff does not dispute that *before* the Article's publication, he was "dumped by a host of big box stores, as Bed Bath & Beyond, Kohl's and Wayfair [] all dropped his product in the wake of the crack addict turned CEO's continued promotion of false claims of election fraud and apparent enthusiasm for martial law." Mem., Ex. A. There are no facts in the Complaint that make it at all plausible, given the substantial negative publicity, that the three statements at issue (or the purported new "implication") caused any additional harm to his reputation. This Court should find that the incremental harm doctrine independently bars his defamation claim.

### D.   Plaintiff Failed to Plead Plausible Allegations of Actual Malice.

Plaintiff concedes, as he must, that the actual malice standard applies here. Opp. at 18. This "demanding burden" requires "'clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement.'" *Celle*, 209 F.3d 163, 182–84 (2d Cir. 2000) (quoting *Bose Corp. v. Consumers Union of U.S.*, 466 U.S. 485, 511 n.30 (1984)). As Plaintiff's own cited authority makes clear, this "requires more than a departure from reasonably prudent conduct." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). In fact, he has characterized the actual malice standard as "almost impossible to satisfy." Supp. MacLaren Decl., Ex. F at 4, 11.

---

[13] *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 395–96 (S.D.N.Y. 1998); *Biro*, 883 F. Supp. 2d at 468 n.10 (discussing incremental harm doctrine in deciding a motion to dismiss, as "guidance" to Court "where the true defamatory sting is caused by statements that are not challenged in the lawsuit"); Mem. at 20 n.29.

8

Plaintiff has not come close to pleading facts sufficient to satisfy this "famously daunting" standard here. *Id.* Instead, he rests his entire argument on the allegation that he and Ms. Krakowski denied meeting each other. Opp. at 18-20. But courts repeatedly have held that denials alone do ***not*** suffice to establish actual malice.[14] Plaintiff knows this is the law; as a defamation defendant, he strenuously has argued to another federal court that "bare conclusory allegations" of actual malice do not suffice, ***even if they are supported by factual allegations of a denial***.[15] Plaintiff also emphasized the constitutionally-mandated "clear and convincing" evidence standard, arguing the defendant must have "expressed or demonstrated any doubt of the truth of his statements or any acknowledgement that they were made recklessly." Suppl. MacLaren Decl., Ex. F at 11. There is no such allegation here.

Instead, Plaintiff tries to rely on the Supreme Court's decision in *Harte-Hanks* (Opp. at 20), but that case is entirely different.[16] There, the plaintiff had "strong, non-speculative evidence," including five witnesses contradicting the publication, and the defendant failed "to make any attempt to interview a key witness or listen to crucial tapes which were available to it…." *See Coliniatis*, 965 F. Supp. at 519. Here, the "denials" came only from the two participants in the

---

[14] *See*, *e.g*., *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("liability under the 'clear and convincing proof' standard of New York Times v. Sullivan cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."). *See also Harte-Hanks*, 491 U.S. at 692 n.37 (citing *Edwards*); *Coliniatis v. Dimas*, 965 F. Supp. 511, 519 (S.D.N.Y. 1997) ("[e]mphatic denials are part of the landscape of journalism, and a decision to print a story in the face of such a denial, particularly where, as here, it comes from an interested protagonist, does not establish clear and convincing evidence of malice."); *Tah v. Glob. Witness Publ'g, Inc*., 991 F.3d 231, 242 (D.C. Cir. 2021) (finding no actual malice despite six denials).

[15] Suppl. MacLaren Decl., Ex. F at 14 ("Dominion's self-serving letters … were not reason for Mr. Lindell to doubt the truth of his statements. … [A] publisher 'need not accept denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharges that, in themselves they hardly alert the conscientious reporter to the likelihood of error.'" (citation omitted).

[16] Plaintiff asserts pejoratively that "Wikipedia treats [Defendants] as an unreliable source," but does not explain how this is relevant to his burden of alleging facts sufficient to establish actual malice; it plainly is not. This constitutional requirement does not turn on how unidentified third parties view the defendant's credibility. Nor does Plaintiff try to explain why "Wikipedia" is credible – as he knows, this website is written by ***anonymous*** third-party volunteers; anyone is allowed to write on the site. *See* https://en.wikipedia.org/wiki/Wikipedia:About.  An anonymous statement published in 2017 about MailOnline says nothing about alleged actual malice here.

relationship, whom sources described as trying to keep the relationship quiet. Ex. A. Moreover, the reporter here reached out to Plaintiff, and prominently included his denial in the Article. Cmplt. ¶ 17. This conduct does not reflect "purposeful avoidance of the truth." *Connaughton*, 491 U.S. at 692. Because Plaintiff failed to meet his burden of alleging facts sufficient to establish actual malice here, his lawsuit should be dismissed.

## II.   THE NEW YORK SLAPP STATUTE APPLIES

Plaintiff cannot avoid application of the amended New York SLAPP statute here. The only case he cites involved *California's* SLAPP statute, not New York's, and addressed what the court deemed to be procedural provisions that conflicted with the Federal Rules. *La Liberte v. Reid*, 966 F.3d 79, 86 n.3, 87 (2d Cir. 2020). Here, Defendants are arguing for the application of **substantive** provisions of the law added by the New York Assembly: expanding the actual malice standard to cases involving private figures, and the Section 70-a provision that creates a substantive cause of action for attorney's fees under New York law. *See* Mem. at 24-25.[17] This Court should find that New York's SLAPP statute and those substantive provisions apply here.[18]

## CONCLUSION

Plaintiff has recognized the "enormous chilling effect on speech" that is caused by the "substantial expense of litigation," and has fervently argued that "[d]efamation cases … must be weeded out and terminated on early Rule 12(b)(6) motions … to avoid silencing and self-censorship." Suppl. MacLaren Decl., Ex. A at 4. On this point, the parties agree. Mem. at 23-25. For all the reasons set forth, this Court should dismiss Plaintiff's Complaint with prejudice.

---

[17] *E.g.*, *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (Nevada SLAPP law's provision on fee-shifting is substantive), *certified question answered*, 402 P.3d 665 (Nev. 2017) (*en banc*), *aff'd*, 876 F.3d 413 (2d Cir. 2017). *Accord Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) ("[a]ttorney's fees mandated by state statute are available when a federal court sits in diversity."); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 218 (S.D.N.Y. 2006) (rule on attorneys' fees was substantive, not procedural).

[18] Every court in this district to consider the issue has held that the amended statute applies to federal court diversity actions. *See* Mem. at 25 (citing cases); *Sweigert v. Goodman*, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021).

10

| | |
|---|---|
| Dated: New York, New York<br>May 6, 2021 | Respectfully submitted,<br><br>DAVIS WRIGHT TREMAINE LLP<br><br>By: */s/ Kelli Sager*<br>Kelli Sager (*pro hac vice*)<br>Selina MacLaren (*pro hac vice*)<br>865 S. Figueroa Street, Suite 2400<br>Los Angeles, CA 90017<br>Phone:  (213) 633-6800<br>Email:  kellisager@dwt.com<br>          selinamaclaren@dwt.com<br><br>Jeremy Chase<br>1251 Avenue of the Americas, 21st Floor<br>New York, NY  10020<br>Phone:  (212) 489-8230<br>Email:  jeremychase@dwt.com<br><br>*Attorneys for Defendants Mail Media, Inc. and Laura Collins* |

11