UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL LINDELL,                                    :
                                                    :
                    *Plaintiff,*                    :
                                                    :     1:21-cv-667-PAC
        - *against* -                               :
                                                    :     **OPINION & ORDER**
MAIL MEDIA INC. d/b/a MAIL ONLINE                   :
and LAURA COLLINS,                                  :
                                                    :
                    *Defendants.*                   :
------------------------------------------------------------X

     Michael Lindell sues Mail Media, Inc., and Laura Collins ("Defendants") for libel, alleging

they published a false tabloid article about a romantic relationship between him and an actress.

Defendants move to dismiss, arguing the Article's challenged statements—including claims that

Lindell bought the actress alcohol—are not defamatory as a matter of law.  Lindell opposes the

motion and has simultaneously amended his complaint.  Because the Court finds Lindell's

Amended Complaint[1] fails to identify any actionable statements from the Article, the Court

**GRANTS** the Defendants' motion and **DISMISSES** the Amended Complaint without prejudice.

## BACKGROUND

     The following factual allegations are taken from Lindell's Amended Complaint ("Am.

Compl."), ECF No. 26.  The Court presumes these allegations are true for purposes of this motion

to dismiss.  *See Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs,* 716 F.3d 10, 12 (2d Cir.

2013) (per curiam).

---

[1] The Court treats the Amended Complaint as operative.  *See* discussion *infra* p. 5.

Defendant Mail Media, Inc. ("MMI") is a Delaware corporation based in New York City. Am. Compl. ¶ 7.  MMI publishes a tabloid news website, www.dailymail.com (the "Website").[2] *Id.*  The Website apparently attracts many millions of visitors every month.  *Id.*  The other defendant, Laura Collins, is the Website's Chief Investigative Reporter.  *Id.* ¶ 8.  She is likewise based in New York City.  *Id.*

Plaintiff Michael Lindell lives in Minnesota.  Am. Compl. ¶ 6.  After a history of substance abuse, he "has been proudly, publicly clean and sober for over a decade."  *Id.* ¶ 14(a).  He "frequently writes and speaks publicly about his spiritual triumphs" over addiction.  *Id.* ¶ 2.  In approximately 2019, he founded the Lindell Recovery Network, which serves people battling addiction by connecting them with Christian-based recovery organizations.  *Id.* ¶¶ 14(a), 24.  The Recovery Network emphasizes Lindell's "personal story as a Christian who came back from his addiction to become a success."  *Id.* ¶ 26.  The Network has an online platform and "intends to affiliate with churches as religious treatment centers" as part of its mission.  *Id.* ¶¶ 28–29.

At issue here is a tabloid article written about Lindell.  On January 21, 2021, MMI posted the Article, which was attributed to Defendant Collins, on the Website.  Am. Compl. ¶ 11; *see also* ECF No. 24-1, MacLaren Declaration, Exhibit A (the "Article").  The Article was titled: "EXCLUSIVE: Trump-loving MyPillow CEO Mike Lindell had secret romance with *30 Rock* actress Jane Krakowski and wooed her with flowers and champagne in relationship that BAFFLED her friends."  Am. Compl. ¶ 11.  As the title indicates, the Article claimed Lindell had secretly dated an actress, Jane Krakowski.  *Id.* ¶ 12.  The Article stated Lindell "wooed the actress for close to a year, showering her with gifts and flowers."  *Id.* ¶ 13.  It recounted how Lindell "sent flowers"

---

[2] MMI disclaims owning or publishing the Website. *See* Defs.' Mem. Supp. Mot. Dismiss 4 fn.6, ECF No. 23.  However, the Court accepts the allegation in the Amended Complaint—that MMI does publish the Website—as true for purposes of this motion to dismiss.

to Krakowski "almost every week," as well as "champagne and bottles of different liquor." *Id.*
The Article ended by saying Lindell was "shown the door" by Krakowski in the summer of 2020,
possibly because Krakowski "didn't like the way [Lindell] treated women," although it does not
provide any additional detail. *Id.* ¶¶ 12, 13.

The Article alluded to Lindell's rehabilitation story. One unnamed friend said Krakowski
"was impressed that [Lindell] had turned his life around, from his recovery from crack cocaine
and alcohol addiction to now being sober and worth hundreds of millions of dollars." Article at 5.
It also made one glancing reference to Lindell's faith—a "moment of Divine intervention" that
helped him "achieve[] sobriety through prayer" after his addiction had cost him his marriage, his
fortune, and his health. *Id.* The Article did not reference the Lindell Recovery Network at all.

According to the Amended Complaint, the Article was utterly false.

For one, the romance between Lindell and Krakowski never took place. *See* Am. Compl.
¶¶ 1, 3, 14. Before the Article was published, Lindell emailed the Defendants and told them he
had never heard of Krakowski. *Id.* ¶¶ 3, 14(b), 17. Krakowski also denied having ever met Lindell.
*See* Article at 1, 8. Both denials were printed in the Article's sub-headline and at the end of its
text. *See id.*

On a more abstract level, Lindell claims the Article disparaged his moral character. *See*
Am. Compl. ¶ 2. He maintains he is a recovering alcoholic who would never buy alcohol or "foist"
it on other people, including Krakowski. *Id.* ¶ 14(a). To the contrary, Lindell is a Christian who
"is piously devoted to his religious faith, his family, civic involvement and charity." *Id.* ¶ 14(c).
Thus, he would never "engage in any sort of scandalous" or secret romantic relationship.[3] *Id.*

---

[3] Lindell does not dispute he was single when the Article was published. The Article states he has
an ex-wife. *See* Article at 8.

As a result of the Article, Lindell asserts his reputation "in the field of addiction recovery as well as in religious communities" has been damaged.  Am. Compl. ¶ 5.  He also claims the Lindell Recovery Network "has only been able to associate with a handful of churches," and that an unnamed "Christian broadcaster" told the Recovery Network that "churches may be pulling out" because of the Article.  *Id.* ¶ 30.

The Amended Complaint alleges Defendants knew (or should have known) Lindell had never met Krakowski, he would never buy alcohol for someone else, and he would never carry on a secret romance.[4]  Am. Compl. ¶¶ 4, 14, 15, 19.  It also alleges the Defendants failed to contact other witnesses to verify the Article before publishing.  *Id.* ¶ 17.

Lindell now brings a single claim of defamation against the Defendants.  *See* Am. Compl. at 7–8.  The Defendants move to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6), arguing primarily that the Article's statements are not defamatory as a matter of law.  *See generally* ECF No. 22; ECF No. 23 ("Defs.' Mem.").  Lindell filed a memorandum in opposition and, in the alternative, a "proposed" amended complaint.  *See* ECF No. 25 ("Pl.'s Opp'n").  Defendants then filed a reply and a separate letter urging the Court to deny leave to amend the complaint.  *See* ECF No. 28 ("Defs.' Reply"); ECF No. 30 ("Defs.' Ltr. Opp'n Am. Compl.").

---

[4] Lindell does *not* challenge several provocative assertions in the Article.  The Article describes Lindell as a "beleaguered 'Stop the Steal' Trump champion" who faces dozens of legal actions for his claims about election fraud and a fake COVID-19 cure, and for false advertising related to his pillow company.  *See* Article at 2, 4.  It goes on to state Lindell's "apparent enthusiasm for martial law" has caused retailers to drop his pillow products.  *Id.* at 2.

Defendants argue these statements should bar Lindell's claim under the incremental harm doctrine.  *See* Defs.' Mem. at 18–20.  That doctrine allows a court to dismiss a defamation claim where the unchallenged parts of a publication cause the vast majority of reputational harm—such that the challenged statements harm to a non-actionable degree.  *See Herbert v. Lando*, 781 F.2d 298, 310–11 (2d Cir. 1986).  As the Court dismisses Lindell's claim on other grounds, it need not reach Defendants' argument about incremental harm.

4

## **DISCUSSION**

### I.   **Amendment of Complaint under Rule 15(a)**

The Court first addresses the threshold issue of which version of Lindell's complaint is operative.  A plaintiff may file an amended complaint even though a motion to dismiss the original complaint is pending.  *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020).  Here, although both sides treat Lindell's Amended Complaint as a "proposed" one requiring the Court's permission to amend, Lindell may amend his pleading as a matter of right. Federal Rule of Civil Procedure 15(a)(1)(B) permits a party to amend its complaint once as a matter of course within 21 days after service of a motion to dismiss.  Defendants filed their motion to dismiss on April 12, 2021; only 15 days later, on April 27, Lindell filed his Amended Complaint. Thus, the Court treats the Amended Complaint as timely and operative, having fully superseded the Original Complaint.

If an amended complaint is filed pending a motion to dismiss, the Court "has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway*, 955 F.3d at 303–04.  The Court here chooses the latter option, as the motion is fully briefed and addresses the same issues raised in the Amended Complaint.[5] Accordingly, Lindell's Amended Complaint must withstand the same Rule 12(b)(6) scrutiny as his Original Complaint.  *See id.*

### II.   **Standard for a Rule 12(b)(6) Motion to Dismiss**

To defeat a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

---

[5] The only substantive change in the Amended Complaint is the addition of paragraphs 24 to 30, which describe the Lindell Recovery Network.  *See generally* ECF No. 27 (Pl.'s Redline of Am. Compl.).

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  While the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, the Court may consider the complaint's own content as well as extrinsic material that is "integral" to the complaint. *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).  Although Lindell did not attach the Article to his pleadings, the Amended Complaint quotes extensively from the Article to provide the basis of his defamation claim.  *See* Am. Compl. ¶¶ 11–13, 17–18.  Defendants submitted the full text of the Article; accordingly, the Court considers the Article's full text when evaluating the sufficiency of the Amended Complaint.  *See Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, No. 20 Civ. 7670 (CM), --- F. Supp. 3d. ----, 2021 WL 3173804, at *2 (S.D.N.Y. July 27, 2021).

## III.    Elements of Defamation Under New York Law

The parties agree New York law applies to this motion to dismiss.  *See* Defs.' Mem. at 7– 8; Pl.'s Opp'n at 7 fn.1.  Thus, the parties "consent concludes the choice of law inquiry." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4)

falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin*, 940

F.3d at 809 (cleaned up).[6]

Of these elements, the first—whether a statement itself could be defamatory— "should

ordinarily be resolved at the pleading stage." *Church of Scientology Int'l v. Behar*, 238 F.3d 168,

173 (2d Cir. 2001); *see also Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000)

("Whether particular words are defamatory presents a legal question to be resolved by the courts

in the first instance.") (quoting *Aronson v. Wiersma,* 483 N.E.2d 1138, 1139 (N.Y. 1985)).

Resolving this question at the pleading stage is important given that the filing of a libel lawsuit

"may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the

lawsuit itself." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (internal quotations

omitted), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

Under the first element, the challenged statement must be "reasonably susceptible to the

defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997). The

Court's assessment therefore depends on the scope of defamatory meaning under New York law.

"A defamatory meaning is one that exposes an individual to public hatred, shame, obloquy,

contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an

evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and

friendly intercourse in society." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 90 (2d Cir.

2003) (cleaned up) (applying New York law); *see also Thomas H. v. Paul B.*, 965 N.E.2d 939, 942

---

[6] Additionally, a plaintiff who is a public figure—which Lindell seems to concede he is, see Pl.'s Opp'n at 18—must prove actual malice. *Palin*, 940 F.3d at 809. "Actual malice" refers to the defendants' knowledge that the defamatory statement was false or made with reckless disregard of its truth. *See id.* Lindell claims he has pled actual malice because the Article admitted Lindell and Krakowski both denied the relationship ever happened. The Court, however, need not reach the actual malice element because Lindell's Amended Complaint fails to identify actionable statements in the first place.

(N.Y. 2012) (similar definition).  The Court does not read the challenged statements in isolation, but rather must examine them "as the average reader would against the whole apparent scope and intent of the writing."  *Van Buskirk*, 325 F.3d at 90 (quoting *Celle*, 209 F.3d at 177).

Lindell's Amended Complaint fails to satisfy this first element.  It has not identified any statements in the Article that a reasonable person would view as defamatory.  The Amended Complaint must therefore be dismissed for failing to state a viable claim.

**IV.     The Article's Statements are Not Defamatory as a Matter of Law**

The Amended Complaint targets two sets of statements from the Article: (1) statements describing how Lindell dated Krakowski and (2) statements describing how he gifted her alcohol. Neither of these sets of statements, on their face, could be plausibly read as defamatory.  Nor are they defamatory by implication.

<u>a.   Statements about Lindell's Relationship with Krakowski</u>

The Article claims Lindell dated Krakowski secretly for nine months.  Am. Compl. ¶ 13. It describes how Lindell "wooed" Krakowski by "showering her with gifts and flowers," and that the two were "passionate" and fought frequently before they broke up.  *Id.*

Even assuming the romance never happened, the above description would not defame Lindell.  Dating an actress—secret or not—would not cause "public hatred," "shame," "ridicule," or any similar feeling towards Lindell.  *Van Buskirk*, 325 F.3d at 90.  Both Lindell and Krakowski are unmarried adults, and Lindell's alleged actions typify those of a person in a consenting relationship.  *Cf. Kimmerle v. N.Y. Evening Journal*, 186 N.E. 217, 218 (N.Y. 1933) (statement that a man and woman were "courting" did not impute immoral relations); *Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 227 (E.D. Va. 1990), *aff'd*, 923 F.2d 848 (4th Cir. 1991) (reasoning that although allegations of live-in lovers "might offend the moral sensibilities of some,

8

cohabitation, in the context of today's social mores, cannot be said to be behavior involving moral depravity or deviation"). New York courts require a publication to "impute[] serious sexual misconduct" to be defamatory per se. *Rejent v. Liberation Publications, Inc.*, 611 N.Y.S.2d 866, 869 (N.Y. App. Div. 1st Dep't 1994) (quoting Rest. (2d) Torts § 574 (1977)). The Article does not mention sexual conduct at all, let alone serious sexual misconduct.

None of Lindell's cited cases support a plausible reading of the Article's statements as defamatory. For example, he cites to a New York case concerning a published photograph of a plaintiff, showing him shirtless and holding his crotch area, surrounded by "innumerable other suggestive advertisements of live sex videos, telephone sex talk, erotic devices and sexual literature." *See Rejent*, 611 N.Y.S.2d at 868. The *Rejent* Court found the entire visual could imply the plaintiff was "sexually lustful and promiscuous." *Id.* In stark contrast here, there would be nothing deviant about Lindell "wooing" Krakowski by buying her flowers and other gifts. That is the sort of courtship ritual that traditional suitors practice every day.

Lindell's other primary authority is likewise inapposite. In *Gorman v. Swaggart*, a Louisiana state court held a minister of religious organization could bring a defamation claim based on accusations that he had engaged in sexual affairs and embezzlement. 524 So.2d 915, 919 (La. App. 1988). Lindell highlights the *Gorman* Court's comment that defamation of the plaintiff "was defamation of his ministry" because, as the ministry's "principal spokesman, the plaintiff's "reputation for spiritual and moral integrity was the cornerstone on which the ministry was built." *Id.* But the allegations in *Gorman* were very different than Lindell's own. The *Gorman* plaintiff had allegedly participated in an adulterous relationship—not a relationship between two single

9

adults like Lindell and Krakowski. *See id.* at 921.[7]  And at the time of *Gorman*, Louisiana state

courts found statements "imputing adultery or extramarital sexual relations" to be defamatory on

their face. *Id.*  Lindell has provided no support for the proposition that gossip about a typical

monogamous relationship could be "reasonably susceptible" to defamatory meaning. *Levin*, 119

F.3d at 195.

b.  <u>Statements about Lindell Purchasing Alcohol as a Gift</u>

Lindell also claims the Article falsely associates him with alcohol because it said he bought

Krakowski champagne and other bottles of liquor. That association is indirect at best.  The Article

never stated Lindell consumes alcohol himself.  In fact, it explicitly noted Lindell is sober.  *See*

*Cohn v. Nat'l Broad. Co.*, 408 N.E.2d 672, 673 (N.Y. 1980) (directing courts not to "strain to find

a defamatory interpretation where none exists").

Inferring a step further, Lindell claims the Article still defamed him because he would

never buy alcohol or "foist" it on other people after recovering from his own addiction.  Am.

Compl. ¶¶ 2, 14(a).  But whatever Lindell's personal history with addiction, buying alcohol for a

dating partner would not reasonably expose him to "public hatred," "shame," or "ridicule."  *Van*

*Buskirk*, 325 F.3d at 90.  The purchase of alcohol is a legal and ordinary act.  If even more

problematic depictions of alcohol consumption, such as underage drinking or alcoholism, routinely

fail to qualify as defamatory in New York courts, *see, e.g.*, *Alvarado v. K-III Mag. Corp.*, 610

N.Y.S.2d 241, 243 (N.Y. App. Div. 1st Dep't 1994), surely no reasonable reader could find it

offensive to exchange champagne or other bottles of liquor as gifts between romantic partners.

---

[7] The defamatory statements in *Gorman* also went much further than falsifying a relationship—
they also accused the plaintiff of embezzling church funds and working with the Mafia.  524 So.
2d at 917–18.

10

      c.  <u>Defamation by Implication</u>

Even if statements about the secret romance and alcoholic gifts were not expressly defamatory, Lindell maintains they could still defame him by implication. For a defamation-by-implication claim to succeed, Lindell needs to show the Article's statements were "capable of communicating the alleged defamatory idea when words were given meaning not ordinarily attributed to them or due to external factors." *Fairstein v. Netflix, Inc.*, --- F. Supp. 3d ----, No. 20 Civ. 8042 (PKC), 2021 WL 3501527, at *7 (S.D.N.Y. Aug. 9, 2021) (quoting *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000)).

In essence, Lindell asks the Court to view the Article through the lens of his faith and his redemptive story. He contends "in the context of his profession" as founder of the Lindell Recovery Network, "allegations that he is a hypocrite about issues of Christian morality and alcohol consumption can plausibly allege defamatory meaning." Pl.'s Opp'n at 10–11 (emphasis removed). Because Lindell's faith-based nonprofit is staked on his credibility as its founder, his theory goes, damage to his credibility also damages his ability to run that nonprofit. Thus, Lindell claims he satisfies New York's pleading requirement of either special damages or defamation per se. *See Moraes v. White*, No. 21 Civ. 4743 (PAE), 2021 WL 5450604, at *10 (S.D.N.Y. Nov. 22, 2021). Lindell's theory is flawed for at least three reasons.

*First*, even in the light most favorable to Lindell's claim, the Court cannot find any language in the Article suggesting he is a hypocrite, at least regarding his romantic relationships or his abstention from alcohol. Importantly, the Article does not discuss the Lindell Recovery Network—or more generally, Lindell's work with people struggling with substance abuse—a

single time.[8]  Information about Lindell's nonprofit, which had existed for just two years before the Article was published, "therefore constitutes extrinsic fact not 'presumably known to its readers' which, even if pleaded and proved, does not make the article libelous on its face." *Alvarado*, 610 N.Y.S.2d at 243 (quoting *Hinsdale v Orange County Publs.*, 217 N.E.2d 650, 653 (N.Y. 1966)).  The Article is also silent about Lindell's dating history (besides the fact that he has an ex-wife) and his views on relationships.  All told, the Article simply does not provide any of Lindell's moral principles to juxtapose against his relationship with Krakowski.  In other words, the reader would have no reason to think Lindell's actions would undermine his religious or charitable mission when the reader was never told about that mission in the first place.

*Second*, even if the Article did imply Lindell was a hypocrite, he has not properly alleged the Defendants *intended* to imply that hypocrisy.  Under a defamation-by-implication theory, Lindell "must make a rigorous showing that" the Article "as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 37–38 (N.Y. App. Div. 1st Dep't 2014).  Nowhere does the Amended Complaint allege—let alone make a "rigorous showing"— that the Defendants intended to portray Lindell as a hypocrite for dating an actress or for buying her alcohol.

---

[8] At the very least, the absence of talk about his nonprofit would foreclose the per se factor in Lindell's theory.  "It is not sufficient that such words tend to injure plaintiff in his business, *they must have been spoken of him in his business*." *Tacopina v. Kerik*, No. 14 Civ. 749 (LTS), 2016 WL 1268268, at *4 (S.D.N.Y. Mar. 31, 2016) (cleaned up) (emphasis in original).  Lindell's nonprofit "business" was not spoken of at all.

Consequently, the Court sets aside the related question of whether Lindell could have two "businesses" at once—by leading an addiction-recovery nonprofit while simultaneously serving as the CEO of a multi-million-dollar pillow company.

*Third*, although Lindell is correct that the Court must consider the statements' context to determine defamatory meaning, he has identified the wrong context. It is the context of the *Article* as a whole—not the subjective (and perhaps unknown) context of Lindell's outside life, including his nonprofit—that is relevant. *See, e.g.*, *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 829 (N.Y. 1995); *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60 (2d Cir. 1980); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (1st Dep't 2015). And the statements' relevant audience is "the public to which they are addressed," not a narrower audience selected by the plaintiff. *Celle*, 209 F.3d at 177 (quoting *November v. Time, Inc.*, 194 N.E.2d 126, 128 (N.Y. 1963)) (emphasis removed). The Amended Complaint does not allege the Website's readership is anything less than the public at large. The Court therefore declines to test the Article's statements by asking how they would be understood by an amorphous subset of evangelical Christian readers. To the extent Lindell seeks to read the Article in this specific context, he does not state a valid claim.

Lindell might have been embarrassed or annoyed by this tabloid Article, to be sure. But he only challenges aspects of the Article that described routine acts accepted by society. *See Fairstein*, 2021 WL 3501527 at *9. Those statements cannot be reasonably construed as defamatory, and he therefore fails to state a viable defamation claim.

## V.   Defendants Are Not Entitled to Attorneys' Fees in this Action

Given that the Court dismisses the Amended Complaint, Defendants contend they are entitled to attorneys' fees under New York's SLAPP statute. In 2020, New York amended its SLAPP statute to expand protections for defendants facing meritless lawsuits, including mandatory shifting of attorneys' fees. *See* N.Y. Civ. Rights Law § 70-a; *Planned Parenthood*, 2021 WL 3173804 at *9.

The SLAPP statute, however, requires the defendant to bring "an action, claim, cross claim or counterclaim" to recover attorneys' fees. N.Y. Civ. Rights Law § § 70-a; *see also Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) (noting in dicta that the statute creates an "affirmative cause of action" for attorneys' fees). Defendants request attorneys' fees in their memorandum supporting their motion to dismiss, see Defs.' Mem. at 24–25, but they never asserted a standalone counterclaim for attorneys' fees. Because the Court dismisses the Amended Complaint before Defendants "filed an answer asserting any sort of claim, it would seem that, per the terms of the New York law, the Defendant[s] must file a separate lawsuit in order to recover any attorneys' fees." *Planned Parenthood*, 2021 WL 3173804 at *10.[9]

## CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' motion and **DISMISSES** Lindell's Amended Complaint without prejudice. If Lindell believes he can amend his pleading again to state a valid claim, he may file a letter motion and proposed amended complaint on or before January 14, 2022.

The Clerk of Court is directed to close the motion at ECF number 22.

Dated: New York, New York
   December 10, 2021

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge

---

[9] The Court notes that an award of attorneys' fees is not guaranteed, even if Defendants file a separate lawsuit. At least one court in the Southern District has concluded this new attorneys' fees provision of the SLAPP statute does not apply in federal court. *See Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, --- F.Supp.3d ----, No. 20 Civ. 7269 (VEC), 2021 WL 3271829, at *13 (S.D.N.Y. July 30, 2021); *but cf. Harris v. Am. Accounting Ass'n*, No. 5:20 Civ. 1057 (MAD) (ATB), 2021 WL 5505515, at *13–14 (N.D.N.Y. Nov. 24, 2021) (awarding attorneys' fees under statute).